SUMMERS, Justice.
 

 An indictment was returned against appellant Dave A. Coleman by the grand jury of Bossier Parish on October 11, 1967 charging that he negligently killed Gregg Wood, an offense denounced by Article 32 of the Louisiana Criminal Code.
 
 [1]
 
 After trial Coleman was convicted and sentenced to three years in the penitentiary.
 

 Three errors are assigned by bills of exceptions for consideration on appeal.
 

 The first bill of exceptions was reserved when the trial judge permitted Dr. D. R. Martin and Dr. Willis P. Butler to testify after defense counsel objected that they had violated the order of court under which the witnesses had been excluded from the courtroom in accordance with Article 764 of the Code of Criminal Procedure:
 

 “Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.”
 

 Defense counsel’s objection was based upon his observation of the district attorney and the two expert witnesses talking in a hallway during a recess and his assumption that they were discussing the details of the case. Testimony was heard to determine whether the witnesses had discussed the case with one another or with
 
 *267
 
 the district attorney, and the judge ruled that there had been no violations of the order excluding the witnesses from the courtroom.
 

 Although the record does not contain the order issued by the judge to the witnesses, we assume he properly instructed the witnesses in accordance with Article 764 of the Code of Criminal Procedure by admonishing them not to discuss the case with other witnesses. Since we must review the facts upon which this ruling is based to determine its correctness, we must frankly state that we do not agree with the' finding of the trial judge that the witnesses did not speak about the case. We believe that the district attorney and the doctors inadvertently entered into a conversation while they were together, concerning matters bearing upon the authentication of a vial of blood, a vital issue in the case, and that a violation of the order of exclusion occurred. We do not believe, however, that this conversation affected the testimony of the doctors, nor do we believe that the facts concerning the authentication of the vial of blood were seriously contested. It is the application of the law to the facts concerning the adequacy of the authentication which is strenuously urged by the defense, as will be seen in our consideration of Bill No. 3. Under the circumstances, we are satisfied that appellant suffered no prejudice by the violation of the order.
 

 What is particularly important about this bill, however, is that it brings into sharp focus the effect of the 1966 change in the Code of Criminal Procedure brought about by Article 764, which became effective on January 1, 1967. Prior to the revision of the Code, the statutory law provided for disqualification of witnesses who disobeyed what was then called an order of sequestration. See Code of Crim.Proc. Art. 371 (1928). But this requirement was subject to the proviso that the judge could, in all cases, in his discretion, permit any witness to testify. Other provisos permitting parties to call witnesses who had disobeyed the order of sequestration without their knowledge further weakened the penalty of disqualification. Similarly, the jurisprudence prior to Article 764 in large measure relegated to the trial judge broad discretion in determining whether a witness could testify when the order of sequestration was violated. See cases cited in annotations under Section IS of Title IS in West’s LSA (1951).
 

 Article 764 of the new code, therefore, is, as the Comments on that article state, a stylistic revision of Article 371 of the old code. Moreover, the new article deletes any reference to disqualification of the witness when the order is disobeyed. A violation for contempt, however, remains a penalty the judge may impose.
 

 Therefore, defense counsel’s contention that the two doctors should have been dis
 
 *269
 
 qualified from testifying is not well-founded. Evidence of the violation of the rule was admissible and testimony was heard outside the presence of the jury on this issue. Defense counsel could have presented this evidence to the jury also for its effect upon the testimony of the doctors. If he had done so it was the function of the jury to judge the effect of this hallway conversation in violation of the order of exclusion on the testimony of the doctors. It was the function of the judge, in his discretion, to punish the witnesses for contempt for the disobedience.
 

 Bill of Exceptions No. 2 was reserved when the trial judge refused to permit appellant to take the stand and testify for the limited purpose of denying that he voluntarily consented to the withdrawal of a blood sample. The ruling is correct for Section 280 of Title 15 of the Revised Statutes provides that “When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case.” Furthermore, appellant later testified that he consented to the withdrawal of blood.
 

 Bill of Exceptions No. 3
 

 At the trial the district attorney offered to introduce in evidence the vial containing what he contended was a sample of appellant’s blood. Defense counsel objected, asserting that it was inadmissible because the evidence did not establish a continuous chain of custody, control and supervision of the vial from the time Dr. Martin took the blood sample from appellant on September 9, 1967, until the vial containing blood was delivered to Dr. Butler on September 20, 1967 to ascertain its alcoholic content.
 

 The evidence on this point is essentially uncontradicted. Dr. Martin, a deputy coroner of Bossier Parish, withdrew the sample of blood from appellant’s arm in the emergency room of Bossier City General Hospital on September 9, 1967, the night appellant killed Gregg Wood. The blood, under the accepted procedure, was drawn into a lOcc. vacu-tube, a glass tube or vessel with a rubber cap used to collect blood samples. As the name implies, the air is removed from these tubes to avoid possible contamination of the blood and they contain a chemical to prevent clotting. Dr. Martin then inserted appellant’s name, the time when the blood was collected and the date of the accident on a form provided for the purpose, which also contained appellant’s written consent to the withdrawal of the blood sample. Thereafter he labeled the tube with appellant’s name and address and signed the tape label for later identification if necessary.
 

 The vial was then given to Mrs. Janice Robbins, the nurse on duty, who wrapped it in the paper containing appellant’s written
 
 *271
 
 consent and stored it in a refrigerator to await transfer to Dr. Butler, the forensic pathologist, who customarily made the blood analysis. Mrs. Robbins did not testify at the trial and there is some question as to where the vial was stored, in the emergency room or the laboratory. This question has never been satisfactorily answered. It is undisputed, however, that the compartment, where the vials were in all probability stored, were unlocked and accessible to any number of people in the hospital.
 

 As was usual in these cases, a city policeman, Captain Thibodeaux, was called for— probably by Dr. Martin — on September 20 to deliver the vial to Dr. Butler. Dr. Butler made the analysis,- attached his label and retained the vial until it was produced at the trial. He testified that there was nothing about the tube to indicate it had been tampered with and, in his opinion, the blood had not been substituted. There was, therefore, nothing suspect to make him believe that the blood was not the blood of appellant.
 

 Concededly there was a span of time, while the vial was in the refrigeration compartment at the Bossier City General Hospital before it was transferred to Dr. Butler, when the blood could have been withdrawn and other blood substituted. For, though the vial was sealed, we understand the cover is rubber, which implies it can be penetrated by a hypodermic needle after which it reseals itself. A syringe, therefore, could have removed the blood in the vial and with it a substitute blood sample could have been inserted. Thus, it is not a question of authenticating the vial as being the one Dr. Martin used, but, instead, the question is whether the blood is the same.
 

 It is, of course, mere speculation to say the blood sample was substituted. Not one scintilla of evidence supports this view. The sole reliance of the defense is upon the bare fact that adequate supervision and control was lacking from September 9
 
 to
 
 September 20. At least we agree the State has not proven supervision or control during this period and the law places this burden upon the State. Without some proof that the blood sample analysed was the same as that withdrawn from appellant, the sample and testimony concerning its analysis would be inadmissible.
 

 The evidence amply supports the fact that a blood sample was taken by Dr. Martin from appellant and the evidence amply supports the fact that the vial brought to court by Dr. Butler is the same vial used'by Dr. Martin. It is uncontradicted in the evidence, too, that Dr. Butler obtained part of the blood from this same vial to make the analysis.
 

 In State v. Foret, 196 La. 675, 200 So. 1 (1941), the Third Edition of Wigmore on Evidence, Section 1157, was quoted with
 
 *273
 
 approval. In that work it was pointed out there is a natural tendency to infer from the mere production of any material object, without further evidence, the truth of all that is predicated of it.
 

 We recognized in the Foret case that the rule, which requires that an object such as the blood here must be identified, or authenticated, by testimonial proof in order to be admissible in evidence, is founded upon the same principle that requires that a document must be authenticated in order to be admissible in evidence. See also Wig-more, ibid., Sec. 2129.
 

 Our problem here deals only with the adequacy of the proof, for the State recognized the necessity to prove the connection between the blood withdrawn from appellant and the blood analysed by Dr. Butler.
 

 Since a question of fact is presented here, and we have invariably accorded a wide discretion to the fact-finder in such matters, we will not upset this conviction. Our decision is predicated upon the chain of circumstances established by the State’s evidence in its effort to show continuous custody, control and supervision and, particularly, upon the expert opinion of Dr. Butler, supported by his long experience, that the blood in the vial had not been tampered with. The law makes no requirement that the proof be absolute or positive. A clear preponderance of the evidence on a question of admissibility is sufficient. This requirement is satisfied here. State v. Martin, 250 La. 705, 198 So.2d 897 (1967); State v. Bertrand, 247 La. 232, 170 So.2d 386, 389 (1964); State v. Ricks, 242 La. 823, 138 So.2d 589 (1961); State v. Wilson, 240 La. 1087, 127 So.2d 158 (1961).
 

 The conviction and sentence are affirmed.
 

 BARHAM, J., concurs. See dissent in State v. Flanagan handed down this date, 254 La. 100, 222 So.2d 872.
 

 [1]
 

 . La.Crim.Code art. 32 provides:
 

 “Negligent homicide is the killing of a human being by criminal negligence.
 

 “The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
 

 “Whoever commits the crime of negligent homicide shall be imprisoned, with’ or without hard labor, for not more than five years.”