236 So.2d 211

**STATE of Louisiana**

v.

**Milton Cleo ROUSE.**

No. 49953.

May 4, 1970.

Rehearing Denied June 8, 1970.

Boles & Ryan, Charles H. Ryan, Monroe, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Albin P. Lassiter, Dist. Atty., Charles A. Traylor, II, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

Defendant Milton Cleo Rouse was charged by bill of information with the crime of theft in the amount of $169.48 by use of a credit card. When arraigned he entered a plea of not guilty. After trial by a jury of five, he was convicted and sentenced to serve six years at hard labor in the state penitentiary.

Eight bills of exceptions were reserved during the course of the trial, which are relied upon to support this appeal.

*Bill No. 1*

When Joe B. Smith, the prosecuting witness, was being examined on recross by defense counsel, he was asked,

Did the Central Bank ever confirm to you in writing or confirm to you in any

manner that they had received your message about the loss of the card?

The witness replied,

Well on November the 7th Mr. Ross Johnston called me and advised me that a receipt had shown up or they had gotten a call from a place in Baton Rouge that my card had been used in the name of Joe B. Smith for a lodging in a motel and that a T.V. set had been stolen from that motel and they were checking to see if Mr. Johnston knows a Joe B. Smith.

As a result of this reply, defense counsel instructed the witness to confine his answers to the question propounded. Thereafter the witness was asked another question which he answered. Defense counsel then objected to the answer given by the witness to the previous question quoted above, because it was not responsive, and he requested that the Court instruct the jury to disregard the witness' answer. When the Court refused to do so, this bill was reserved.

█ As the trial judge observed in his per curiam to this bill, the answer was responsive. The witness had testified that he reported the loss of the credit card to the bank. When Ross Johnston, the bank's representative, advised him by telephone that his card had been used at a Baton Rouge motel, the card's loss was "confirmed." The fact that the witness gave details of the circumstances whereby the bank "confirmed" the loss of the card does not make the answer unresponsive. Every answer may be explained by the witness unless, under special circumstances, he is instructed by the court to the contrary. This bill is without merit.

### Bills Nos. 2 and 3

█ These bills involve the validity of a waiver of a search warant and a consent to search and seize.

Smith, the prosecuting witness, was a State Police Officer. While off duty he and another officer obtained permission from Doris Jones to enter the house occupied by her at 2712 Lee Avenue in Monroe. Doris Jones was defendant's sister. It was shown, also, that it was defendant's custom to stay with her when he was in Monroe. As a result of the search, a purse and a dress were found. These articles were gifts to Doris Jones from the defendant. The articles were later shown to have been purchased with the stolen credit card.

Permission to enter the house had been obtained in writing, signed by Doris Jones in the presence of two witnesses. The document was complete and thorough. It contained a waiver of a search warrant and the consent of Doris Jones for the officers to search her house and seize anything which had been stolen.

These facts were testified to by Smith, and the written waiver and consent is part

of the record. On cross-examination, defense counsel asked Smith if he knew whether Doris Jones had a police record at the time. The State's attorney objected that the question was an improper effort to impeach the validity of the written waiver and consent. On the other hand, defense counsel argued that he intended to show by the question and answer that Doris Jones was on parole, and, therefore, she was in no position to deny permission for the search to police officers. He asserts that the evidence he was seeking would show that the waiver and consent were not free and voluntary. The trial judge ruled the evidence inadmissible, but instructed counsel that he might attack the free and voluntary character of the waiver and consent by other evidence. Whereupon, bill number 2 was reserved. Bill number 3 was reserved later when defense counsel objected to the introduction of the dress and purse, and the objection was overruled.

The record does not establish that defendant lived at the house where the search took place. It is only shown that he stayed there when he was in Monroe, and there is no showing that these visits were frequent. Defendant was not in the house at the time, and the objects seized as a result of the search were the property of Doris Jones. It is difficult, therefore, to understand how defendant could contest the validity of the waiver and consent when his waiver or consent was not involved. His premises were not searched. His goods were not seized. Only Doris Jones was in a position to complain, and the record contains no evidence that she objected.

In State v. Page, 251 La. 810, 820, 206 So. 2d 503, 507 (1968) we said:

Defendant Ralph Page neither resided at the address nor was he present at the time of the search for the stolen property. Since his privacy was not violated, the search infringed none of his constitutional rights. Hence, in our opinion, he has no standing to attack the search and seizure or suppress the evidence.

The Page ruling is appropriate to the facts of this case and bills number 2 and 3 are without merit

*Bill No. 4*

■ In the course of his examination of a state witness, the prosecutor asked if a photograph he exhibited to the witness contained a likeness of the defendant. The question was asked because, although the witness had sold merchandise to a customer with long hair who paid for it with the stolen credit card, at the time of the trial the defendant had a conventional haircut. The prosecution, therefore, was attempting to establish by the photograph taken of the defendant when he had long hair that the person before the court with a conventional haircut was the same person who presented the stolen credit card to the witness.

Defendant's counsel objected to the question because the proper foundation had not been laid to permit the photograph to be introduced in evidence. The objection was overruled and this bill was reserved. Later the State established the proper foundation by the testimony of a deputy sheriff who had taken the photograph when he "mugged" the defendant in connection with a previous offense. At that time the photograph was introduced in evidence.

Since no effort was made to introduce the photograph in evidence at the time of the objection, the objection was premature. It was simply a matter involving the order of proof decided upon by the State in presenting its case. The subject is controlled by statute, viz.:

Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible. La.Code Crim.Proc. Art. 773.

Article 773 of the Code of Criminal Procedure guarantees that counsel shall have a free hand in the presentation of his case and is authority for the correctness of the trial court's ruling. The bill is without merit.

### Bill No. 5

 Deputy Sheriff Sievers was called as a witness for the purpose of identifying the photograph which he had taken of the defendant. Defendant objected to Sievers testifying because he had not been instructed with all the other witnesses in accordance with Article 764 of the Code of Criminal Procedure which provides:

Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.

Before ruling on the objection, the trial judge ascertained by interrogation that the witness had not been in the courtroom during the trial and that he had not discussed the case with others. He then properly overruled the objection. Wide latitude is accorded the trial judge in such matters and, as Article 764 sets forth, "The court may modify its order in the interest of justice."

### Bill No. 6 (Abandoned)
### Bill No. 7

 Joan Riggs was called as a witness by the defense to rebut the testimony of Deputy Sheriff Sievers, who had identified the photograph of the defendant with long

hair. The prosecutor objected to the witness taking the stand, because she had not been ordered excluded from the courtroom and admonished not to talk to others as the other witnesses had been (See La.Code Crim.Proc. art. 764, supra). In sustaining the objection, the trial judge observed that Joan Riggs, unlike the witness Sievers mentioned in Bill No. 5, had been in the courtroom throughout the trial. She heard all of the testimony. We agree with the ruling. It was within the broad discretion allowed the trial judge under Article 764 of the Code of Criminal Procedure.

■ In State v. Coleman, 254 La. 264, 223 So.2d 402 (1969), we noted the change brought about by Article 764 of the new Code of Criminal Procedure in the law governing the sequestration of witnesses. The new Code (1966) discards the mandatory disqualification provisions of Article 371 of the old Code (1928) and vests broad discretion in the trial judge to decide whether a witness shall be permitted to testify or be ruled in contempt for failure to comply with the order of sequestration. Removing the mandatory disqualification provision, however, does not divest the trial judge of the right to disqualify a witness who has not been placed under the rule or who fails to comply with the order issued pursuant to Article 764 of the new Code of Criminal Procedure. We mean hereby to clarify anything we said or left unsaid in State v. Coleman which would lead to a contrary conclusion.

■ Thus, the trial judge may either punish for contempt or disqualify the witness, or both. Joan Riggs, however, could not be punished for contempt for she had neither been ordered by the trial judge to remain outside the courtroom nor admonished not to speak to others.

### Bill No. 8

[10] During the course of the trial, the State's attorney moved for and obtained the Court's permission to amend the bill of information to conform with the proof. Defense counsel objected and was overruled. A bill of exceptions was perfected, but it has been abandoned in brief. Later, at the close of the trial, while counsel for the State was making his closing argument, he sought to bring the amendment in the bill of information to the attention of the jury. Again defense counsel objected, and he was again overruled. He reserved and perfected this bill to the Court's ruling.

It would avail nothing for the law to permit an amendment to the bill of information, as Article 488 of the Code of Criminal Procedure [1] does, if the amend-

---

1. La.Code Crim.Proc. art. 488 provides:
"When there is a variance between the allegations of an indictment or bill of particulars which state the particulars of the offense, and the evidence offered in support thereof, the court may order the indictment or bill of particulars amended in respect to the variance, and then admit the evidence."

ment could not be brought to the attention of the jury whose duty it is to determine whether the charge in the bill of information has been proven. Counsel for the defense seems to recognize this, but he argues that the law does not specify when the amended bill of information should be read to the accused and the jury. In effect, he contends the void in the law prevents any reading of the amended bill of information. The argument is without merit.

As to the accused being informed, the amendment was brought to his attention when a motion to amend was made, which he vigorously opposed, and, in the absence of a statutory regulation, we find no objection to reading the amended bill of information to the jury during the closing argument by the State.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, Justice (dissenting).

In response to the question "Did the Central Bank ever confirm to you in writing or confirm to you in any manner that they had received your message about the loss of the card?" the witness replied with considerable hearsay which included hearsay evidence that the defendant could have been involved in the theft of a television set from a motel room. Defense counsel cautioned the witness about the non-responsive hearsay answer, repeated the question, and received an affirmative answer. Defense counsel immediately asked the court to instruct the jury to disregard the previous non-responsive answer, and the court ruled: "I think it's too late to make that request." Bill of Exception No. 1 was reserved to that ruling. In per curiam the judge would justify his refusal to charge the jury to disregard the answer by stating that he believed it to be responsive.

Three questions are presented for a determination of the merits of this bill:

Was the answer of the witness non-responsive, unsolicited, inadmissible hearsay? The answer is "yes".

Was the request for the court to instruct the jury to disregard the inadmissible testimony too late? The answer is "no".

Was the response to the question prejudicial to the defendant? The answer must be "yes".

I therefore conclude that it was the trial judge's obligation to comply with counsel's request and instruct the jury to disregard the inadmissible and prejudicial evidence. Bill of Exception No. 1 has merit, and I respectfully dissent.