DIXON, Justice.
 

 Willa Mae Jones appeals her conviction for manslaughter. The case was tried by jury in the. Criminal District Court for the Parish of Orleans, and a verdict of guilty was returned by a vote of nine to three.
 

 It was alleged that on December 6, 1969 defendant, a thirty-two year old woman, went to the bus garage where her husband reported for work as a driver. Defendant allegedly was surprised and enraged when she arrived to find her husband in the company, under' suspicious circumstances, of another woman, the victim Claudia Randall. Defendant attacked Claudia Randall, and a struggle ensued. On the trial, defendant claimed' that she saw ' Claudia Randall go to her purse “as if she was getting something .out” with which to retaliate. At that time, defendant claimed, she herself realized she had a paring knife in her left hand and “ran to her (Claudia Randall) and * * * stuck her.”
 

 Defendant saved twenty bills of exceptions, filed fifteen, and has briefed thirteen. Defendant’s first specification of error, in support of her Bills of Exception. Numbers 3 and 20, is that the trial court erred in holding that the 'Louisiana provision for conviction by .vote of nine out' of twelve jurors is not a denial of due process.' If this court agreed; we would be under a duty to so hold, any provision in the Louisiana Constitution to the contrary notwithstanding. U.S.Const, art. VI. See also Mulkey v. Reitman, 64 Cal.2d 529, 50 Cal. Rptr. 881, 413 P.2d 825 (1966), aff’d. 387 U.S. 369, 87 S.Ct. 1627,' 18 L.Ed.2d 830 (1967). However, this court recently con-' sidered this precise question and- held that the federal Constitution does not require the State of Louisiana to provide that jury verdicts in criminal cases be by unanimous vote. State v. Caston, 256 La. 459, 236 So.2d 800 (1970). Accordingly, defendant’s ■ first specification of error, Bills of Excep-. tion Numbers 3 and 20, is without merit.
 

 Defendant’s second specification of error is that the trial court erred in permitting State witness' Bernadette Barton to testify in violation' of the-rule imposed requiring sequestration of witnesses. In support of this, defendant perfected Bills of Exception Numbers 6, 7 and 8. During the State’s case in chief, a sister of the deceased, Bernadette Barton, was permitted over defense objection to testify, notwithstanding the fact that she had been present-in court from the beginning of the trial. The Barton woman was called to testify, during the State’s case in: chief. The as-sistant district attorney, in -examining the witness immediately preceding the Barton;
 
 *971
 
 woman, appears to have been fully aware that that witness gave the decedent’s purse to the Barton woman. The State asked this preceding witness: “Miss Simon, did you pick up Claudia Randall’s purse that night? * * * Did you eventually give this wallet to one of her sisters?” Nowhere in the record preceding this question is there any testimony to indicate that the State learned during the course of the trial that Miss Simon gave the wallet to the Barton woman.
 

 Bernadette Barton, who had been in the courtroom since the beginning of trial, then was called to the stand over the objection of the defense.
 

 It is tacitly conceded by the State in its brief that defendant did in fact call for sequestration of witnesses at the start of the trial.
 

 The ' defendant’s contention was that, after hitting Claudia Randall with her fists, she saw Claudia Randall go to her pocketbook, presumably to withdraw a knife, and that defendant thereby was justified in using her own knife in self-defense. Therefore, it was relevant for the jury to consider whether or not Claudia Randall did in fact have a knife in her wallet. If she did have a knife, that fact would lend credibility to defendant’s claim of self-defense. On the other hand, if she did not have a knife it would detract from defendant’s anticipated testimony, although defendant still might avail herself of the defense that she mistakenly believed decedent had a knife. Louisiana Revised Statutes 14:20. For this reason, the State wanted to show that the decedent in fact was unarmed at the time of the altercation.
 

 The official revision comment to Louisiana Code of Criminal Procedure article 764 states: “Unlike former R.S. 15:371, this article does not disqualify the witness for disobedience of the provisions of the article.” In each case it becomes necessary to consider whether the calling of the. witness was prejudicial to defendant or merely harmless error, if error at all. In the instant case, the testimony of the Barton woman is not corroborative; rather, it relates to a single, isolated issue — the presence or absence of a weapon in the pocketbook of decedent — a point on which no other witness had testified at the time the Barton woman was called to the stand. Accordingly, defendant’s second specification of error, Bills of Exception Numbers 6, 7 and 8, is without merit.
 

 Defendant’s third specification of error, in support of her Bill of Exception Number 16, is that the trial court erred in excluding certain evidence relating to the issue of self-defense. It is the settled law of Louisiana that evidence of prior threats by the deceased is not admissible unless the accused has laid a foundation by showing a hostile demonstration or overt act on the part of the deceased at the time of
 
 *973
 
 the commission of the alleged offense. State v. Brown, 172 La. 121, 133 So. 383 (1931). In the instant case, the foundation was not laid and the trial court correctly-excluded the evidence. Accordingly, defendant’s third specification of error, Bill of Exception Number 16, is without merit.
 

 Defendant’s fourth specification of error, in support of her Bill of Exception Number 17, relates to the argument of the assistant district attorney that defendant “had a set of kids by another man.” Defendant moved for mistrial, which motion was denied. While the remarks of the assistant district attorney were discourteous, it was abundantly clear to the jury in the overall context of the trial that defendant’s “bunch of kids by another man” were born in lawful wedlock during a prior marriage. The remarks, taken in context, were not prejudicial. Accordingly, defendant’s fourth specification of error, Bill of Exception Number 17, is without merit.
 

 Defendant’s fifth specification of error, in support of her Bill of Exception Number 18, is that the trial court erred in allowing the State to comment unfavorably upon the fact that' the husband of defendant refused to testify. In State v. McMullen, 223 La. 629, 66 So.2d 574, 576 (1953), this court stated: “Under the jurisprudence, the district attorney has the right to comment on the failure of the accused to have his witness spouse testify in his behalf.” Accordingly, defendant’s fifth specification of error, Bill of Exception Number 18, is without merit.
 

 Defendant’s sixth and last specification of error, Bills of Exception Numbers 11, 12, 13, 14 and 15, is that the trial court erred in various rulings related to postarrest Miranda warnings. Considerable testimony was taken in the trial court on this point. The accused made much of the fact that the Rights of Arrestee Form shows that it was signed after the confession was signed. As the trial judge observed, this is immaterial since Miranda requires only that the accused be informed of his rights prior to questioning. In the instant case, the evidence amply supports the trial judge’s conclusion that this was done three times before the defendant signed her confession. It is irrelevant that the accused waited until after she confessed to acknowledge in writing that all warnings had been given prior to her confession. Indeed, the written confession itself recites that the requisite warnings had been given. Accordingly, defendant’s sixth and last specification of error, Bills of Exception Numbers 11, 12, 13, 14 and 15, is without merit.
 

 Defendant’s other Bills of Exception, not briefed, have been considered by this court. They, too, are without merit.
 

 Affirmed.