287 So.2d 770 (1973)
STATE of Louisiana
v.
Larry K. BARNARD.
No. 53549.
Supreme Court of Louisiana.
December 3, 1973.
Rehearing Denied January 11, 1974.
*771 William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Charles W. Richard, Asst. Dist. Atty., for plaintiff-appellee.
Raymond D. Fuljenz, Lake Charles, for defendant-appellant.
WILLIAM A. CULPEPPER, Justice Ad Hoc.
Larry K. Barnard was indicted for the murder of Rex Emile Lanier, tried and found guilty. He appeals his conviction and sentence to life imprisonment, relying upon five bills of exceptions.
In the latter part of 1970 or 1971, Barnard drove a Corvette automobile to Louisiana where it was seized by the Sheriff of Calcasieu Parish. The car was subsequently sold to Harry Tubbs. Some time later, in the early spring or summer of 1971, Barnard saw the car parked at the *772 home of Tubbs. He stopped to inquire about it and spoke to the father of Tubbs. Barnard made a remark to the effect that if he did not get the car back there could be a killing over it because the car belonged to him. Thereafter, Barnard left Lake Charles and traveled to Illinois. He returned to Lake Charles on March 7, 1972 in an admittedly stolen car in the company of Dawn Myslinski.
On the night of April 5, 1972, while in a lounge known as Rick's Place on Broad Street in Lake Charles, the bouncer, Kenneth E. Hooper, overheard an argument between the defendant and the victim, Lanier, relative to the Corvette automobile. Lanier had acquired the car. The bouncer testified that Barnard threatened to kill Lanier. Barnard was allegedly ejected by the bouncer.
Lanier was shot and killed on April 6, 1972, sometime between eight o'clock in the morning and twelve noon. It was established at trial that the weapon used was a Ruger .22 caliber automatic pistol.
Barnard, in the afternoon of the killing, stole a Lincoln Continental and, with Dawn Myslinski, drove from Lake Charles to Virginia, then to Illinois and Ohio. While in Illinois, according to Barnard, he removed a .22 Ruger pistol from a drawer in the house of Frank Myslinski. He subsequently sold the pistol in Ohio.
It was established that Frank Myslinski owned a Ruger .22 caliber automatic, which was missing from a drawer in his house; that he never knew the victim; and that he had never been in Lake Charles.
Prior to trial, defendant requested inspection and examination of the Ruger pistol and the cartridge alleged to have been used in the murder in order that a ballistics test could be made by an expert of his choosing, under guidelines set out by the court. When this request was denied, Bill of Exceptions No. 1 was reserved.[1]
Defendant contends he was entitled to pre-trial inspection of these items under this Court's holding in State v. Migliore, 261 La. 722, 260 So.2d 682 (1972). He urges that this examination was necessary in order to adequately prepare for his defense; that the denial of his motion seriously prejudiced him; and resulted in a denial of a fair trial and due process under federal and state constitutional provisions.
The evidence sought for examination in the present case is a Ruger pistol and a .22 caliber slug removed from the victim's head. The doctor who removed the bullet testified that it was badly damaged and distorted from its normal shape. The ballistics expert, Deputy Sheriff Charles Ellis, testified that 75% or more of the slug was gone and identification had to be made on the remaining 25%.
At the trial, the State called two firearms and ballistics experts who confirmed that the Ruger found in Ohio, and which had previously been sold in that State by the defendant, was the same Ruger that fired the fatal shot into the skull of the murder victim. Defendant contends that, because of the denial of his request for pre-trial inspection of the Ruger and slug, he was not permitted to have a ballistics expert of his own choosing, but was limited in his defense to cross-examination of the State's experts in violation of his constitutional rights to a fair trial and due process of law.
The record shows that trial started on February 6, 1973. The gun and slug were introduced in evidence by the prosecution on February 7, 1973. The trial ended on February 9, 1973. At no time after introduction of the gun and slug in evidence did defendant move to have them examined by experts of his own choosing. Nor did he move for a continuance for this purpose.
*773 In the case of State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), relied on herein by defendant, we allowed independent pretrial examination by defendant of narcotics under orders and guidance of the court for the protection and preservation of that evidence.
However, the Migliore ruling has never been applied by this Court to anything other than narcotics.
A request for examination of the weapon, as well as clothing and other physical evidence, was made in the murder prosecution in State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). We there considered that the Legislature deliberately refrained from adopting pre-trial discovery in criminal cases in our Louisiana Code of Criminal Procedure. After discussion of the jurisprudence and careful consideration of the argument of the defense, we declined to broaden the holding of State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945) into full pre-trial discovery. Hunter again adopted the rule of this Court as stated in State v. Shourds, 224 La. 955, 71 So.2d 340 (1954):
"It is the settled law of this State that an accused in a criminal case is without right to a pre-trial inspection of the evidence upon which the prosecution relies for a conviction."
Since the Hunter decision, we have rendered the following decisions denying pretrial inspection of the evidence upon which the prosecution relies for a conviction and have held that all evidence relating to a pending criminal case which is in the possession of the State is privileged and not subject to inspection by the accused unless and until it is offered in evidence at the trial. State v. Fink, 255 La. 385, 231 So.2d 360 (1970); State v. Barnes, 257 La. 1017, 245 So.2d 159 (1971); State v. Coney, 258 La. 369, 246 So.2d 793 (1971); State v. Mitchell, 258 La. 427, 246 So.2d 814 (1971); State v. Cripps, 259 La. 403, 250 So.2d 382 (1971); State v. Edgecombe, La., 275 So.2d 740 (1973); and State v. Frezal, La., 278 So.2d 64 (1973). An exception to this rule has been made in instances where the State has in its possession a written confession of the accused. State v. Dorsey, supra; State v. Hall, 253 La. 425, 218 So.2d 320 (1969). Another exception, as heretofore stated, is to be found in State v. Migliore which allowed pre-trial inspection of narcotics.
In State v. Edgecombe, supra, an aggravated rape charge, this Court denied pretrial inspection and examination of clothing and the results of chemical tests to determine the presence and type of blood or seminal fluid thereon. We considered the applicability of the holding of the United States Supreme Court in Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and found it not apposite to the matter presented in that case.
In Brady, the accused had requested, prior to trial, examination of his co-defendant's extrajudicial statements, some of which were produced, but others denied. It was held in Brady that the suppression by the prosecution of written statements favorable to an accused upon request violates due process, where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. We found no violation of the Brady ruling in the Edgecombe case.
In Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706 (1972), the defendant requested pre-trial disclosure of certain statements and other evidence. The court found no reversible error in the refusal of pre-trial disclosure. The rule was summarized as follows:
"The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment."
Later, in State v. Woodruff, La., 281 So.2d 95 (1973), this Court considered reversible error the denial of a motion for a *774 bill of particulars as to whether a gun was found on or near the victim, and, if so, its make, model and serial number. The accused in Woodruff pleaded self-defense and contended he needed to know whether there was such a gun, and, if so, its description, in order to show whether the victim had a gun and made a move to draw it first before defendant drew his own gun. Under the circumstances present in Woodruff, this Court held that the trial court's refusal to order the production of the information sought in the motion for a bill of particulars constituted a denial of due process in violation of the rule in the Brady and Moore cases. The opinion in Woodruff is not controlling, since it was not agreed to by a majority of this Court. Three Justices dissented, and a fourth concurred, meaning he did not agree with all of the language or rationale of the opinion. See Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971).
Furthermore, Woodruff is distinguishable from the present case. Woodruff involved a motion for a bill of particulars as to whether a gun was found on or near the victim and, if so, requested a description of the gun. The present case involved a motion for pre-trial examination of a gun and slug known to be in the prosecution's possession.
Summarizing, we find that the Federal cases, Brady and Moore, require only that on request of the defendant the prosecution must produce any evidence it has which is favorable to the accused and is material to guilt or punishment. The gun and slug sought here are not shown to be evidence favorable to the accused. Thus, Brady and Moore are not applicable.
Migliore applies only to drugs. Edgecombe denies pre-trial examination of clothing for blood and states that Migliore is limited to dangerous substances. Woodruff is not controlling since it is not a majority opinion of this Court.
Essentially, we are requested here to extend pre-trial discovery procedures to criminal cases, something which the Federal Courts have not required, and which our Louisiana Legislature has deliberately chosen not to do. If such procedures are to be adopted, it is the function of the legislature, not the courts, to adopt comprehensive rules for pre-trial discovery in criminal cases not only by the accused, but by the prosecution.
Defendant was not without relief. After the gun and slug were introduced in evidence, defendant could have had them examined by experts of his own choosing. If necessary, he could have moved for a continuance to perform these tests. He chose not to use this procedure which was available to him.
Accordingly, the request for production of the firearm and cartridge for pre-trial inspection was properly denied by the trial judge.
Bill of Exceptions No. 1 is without merit.
During the trial, when a defense witness, Mrs. Gay McPayne, was called to the stand, the State objected to her testifying on the ground that she had been placed under the rule of sequestration of witnesses at the commencement of the proceedings, and this rule had been violated. Out of the presence of the jury, it was established that Mrs. McPayne, a bartender who worked at Rick's Place the night before the shooting, had been subpoenaed by the defense for the trial. Due to illness, she did not attend the trial the first day and did not hear the court's instruction as to the rule. She appeared in the courtroom at aroung 10:15 a.m. on the second morning of the trial, while Hooper, the bouncer, was testifying. Mrs. McPayne remained in the courtroom for fifteen minutes when court recessed.
The ruling of the trial judge disqualifying this witness from testifying is the subject of Bill of Exceptions No. 2.
*775 Defendant contends the court committed prejudicial error and denied him due process and a fair trial.
The record shows that, at the opening of the trial, defense counsel moved for a sequestration of witnesses which was granted. All witnessess present in the courtroom were instructed and placed under the rule by the court. The trial judge states in his per curiam that it was pointed out by the court that all witnesses were not present, but that each counsel would be responsible for notifying his absent witnesses of the rule.
It was established by the testimony of Mrs. McPayne that she was never so notified by counsel for the defendant. It was further established that her testimony would deny that defendant was at Rick's Place the night before the shooting, or that any argument occurred the night before between the victim and the defendant. This was in direct contradiction to the testimony of the bouncer, Hooper, who was on the stand at the time Mrs. McPayne came into the courtroom and whose testimony she heard.
The statutory provision in regard to sequestration of witnesses is contained in Article 764 C.Cr.P. as follows:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
Defendant points out the reporter's comment states that this article, unlike former R.S. 15:371, does not disqualify the witness for disobedience of the provisions thereof; however, after the court instructs the witness as provided by this article, a violation is a contempt.
Thus, it is asserted that the violation in this instance, due to illness and ignorance of the rule, should not subject the witness to disqualification. This, defendant contends, violates his constitutional right to due process and a fair trial.
Wide latitude is accorded the trial judge in determining whether to disqualify a witness who has not been excluded from the courtroom and who has not been instructed to refrain from talking to others. State v. Rouse, 256 La. 275, 236 So.2d 211 (1970). In that opinion, we recognized that the new code discards the mandatory disqualification provisions of former Article 371 of the 1928 Code, but we also made it clear that, despite this removal, the trial judge is not divested of the right to disqualify a witness who fails to comply with the order issued pursuant to Article 764 C. Cr.P.
The sole purpose of Article 764 C. Cr.P., providing for exclusion of witnesses, is to insure that the witness will testify as to his own knowledge of the case without being influenced by the testimony of other witnesses. State v. McAllister, 253 La. 382, 218 So.2d 305 (1969). Sequestration strengthens the role of cross-examination in developing the facts. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971).
This Court, in considering whether a witness who has violated the sequestration rule should be disqualified from testifying has considered the facts and circumstances in each case and whether prejudice was suffered by the accused.
In State v. Jones, 257 La. 966, 244 So.2d 849 (1971), we approved a ruling of the trial court permitting a State witness to testify in violation of the rule imposed requiring sequestration of witnesses. We stated:
"In each case it becomes necessary to consider whether the calling of the witness was prejudicial to defendant or merely harmless error, if error at all." *776 The witness in Jones who was allowed to testify on behalf of the State did not give corroborative testimony; rather, she testified to a single, isolated issuethe presence or absence of a weapon in the pocketbook of the decedenta point on which no other witness had testified at the time she was called to the stand.
In the case under consideration, the bouncer, Hooper, was testifying at the time Mrs. McPayne entered the courtroom and she heard his testimony until the recess. Her testimony, as we have heretofore stated, was in direct contradiction to that of Hooper.
The reason for her ignorance of the rule was the neglect of defense counsel to so notify her. The rule was invoked at the behest of defendant. We think it was defendant's responsibility to inform his witnesses of the rule. Under the circumstances of this case, his failure in this regard cannot be claimed to his advantage.
Furthermore, Mrs. McPayne testified, at the hearing on the objection, that she had discussed the case with her husband. He testified at the trial that defendant was not in the lounge on the night before the shooting. Her testimony would have been merely corroborative of his.
Under these circumstances, we fail to find prejudice to the defendant, and the error, if any, was harmless. State v. Jones, supra.
Bill of Exceptions No. 2 is without merit.
Bill of Exceptions No. 3 re-urges the contentions raised in the bills heretofore discussed and additionally recites that the verdict is contrary to the law and the evidence.
The averments under the latter amount to an attack upon the sufficiency of the evidence presented. The trial judge states:
"The motion for a new trial presented the general argument that the evidence presented by the State was insufficient to warrant conviction. Sufficient evidence was presented which, if believed, would justify conviction."
Sufficiency of evidence is not reviewable on appeal. The allegation that the verdict is contrary to the law and the evidence presents no question of law for our review. State v. Vincent, 284 So.2d 563 (La.) handed down October 29, 1973; State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Grey, 257 La. 1070, 245 So.2d 178 (1971).
This bill is, therefore, without merit.
Defendant, after his motion for appeal to this Court was granted, submitted a motion in which he sought to have the Ruger pistol and the .22 caliber slug transmitted to this Court along with the transcript and record in this case. The trial judge denied the motion, stating that he no longer had jurisdiction. Bill of Exceptions No. 4 was taken.
Rule I, Section 13 of the Rules of the Supreme Court of Louisiana provides for the contents of transcripts in criminal cases.
Only evidence that is made part of a bill of exceptions taken during trial and attached thereto may be considered by this Court. State v. Garner, 255 La. 115, 229 So.2d 719 (1969); State v. Callahan, 247 La. 525, 172 So.2d 668 (1965); State v. Bueche, 243 La. 160, 142 So.2d 381 (1962); Article 844 C.Cr.P. The State's exhibits herein involved were never made a part of a bill reserved. The only bill which was in any way related was Bill of Exceptions No. 1 dealing with denial of the request for pre-trial inspection of these items. A careful review of that bill shows that, although defendant requested the attachment of certain testimony taken at the hearing of the motion, he did not request that the gun and slug be brought up with that bill.
The motion for a new trial raises the question of denial of a weapons expert to *777 defendant, and the bill recites that the entire transcript of the trial should be annexed. However, no specific mention is made of exhibits.
If any part of the record in the case it omitted on appeal, this Court may order a remand for the introduction or correction, as the case may be. See State v. Williams, 260 La. 1153, 258 So.2d 534 (1971).
We do not find it necessary to discuss the merits of this bill, as we feel no prejudice resulted to the defendant from the denial of the judge to transmit this evidence to this Court. It would serve no useful purpose for this Court to view these objects. The weight to be given to them is within the province of the jury.
Bill of Exceptions No. 4 is without merit.
Sentence was imposed after the overruling of defendant's motion for a new trial and before the expiration of the mandatory twenty-four hour delay provided for in Article 873 C.Cr.P. No waiver of the delay appears in the minute entry of the record.
This error, patent on the fact of the record and noticed by this Court after the appeal had been lodged, was called to the attention of the District Attorney and the district court. Thereafter, on May 18, 1973, defendant was brought to court for re-sentencing. Objection was made by defendant, contending that the sentence was null and void. He was resentenced, and Bill of Exceptions No. 5 was reserved.
It is argued in brief filed in this Court that the original sentence was null and void and since the lower court lacked jurisdiction, because of appeal, a re-sentencing without a remand of the case from this Court to the district court is also null and void. A remand to the lower court is now sought.
This Court has held that when sentence is imposed, prior to the delay provided by law and without a waiver of the delay, the sentence imposed is null and must be set aside. In such instances, the conviction stands, but the case is remanded for re-sentencing. State v. Douglas, 250 La. 480, 196 So.2d 799 (1967); State v. McArthur Davis, 278 So.2d 130 (La.1973).
In the following cases, sentences were imposed before the lapse of the twentyfour hour delay after overruling of defendant's motion for a new trial and without a waiver in violation of Article 873 C. Cr.P. and the Court, under Article 920 C. Cr.P., ordered a remand for re-sentencing. State v. Fallon, 277 So.2d 659 (La.1973); State v. Reed, 277 So.2d 657 (La.1973); State v. Adams, 277 So.2d 656 (La.1973); State v. Renfro, 277 So.2d 655 (La.1973); State v. Curry, 277 So.2d 654 (La.1973); State v. Guillory, 277 So.2d 652 (La.1973).
All of the errors in the above cited cases were noticed by this Court, ex proprio motu, when the cases were submitted on appeal. Thus, the remand for the re-sentencing.
The error in the instant case was noted prior to hearing of the appeal in this Court and called to the attention of the district court, which re-sentenced in accordance with law. A remand now would not be in order; the void sentence has been set aside and a legal sentence imposed.
This bill lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents and assigns reasons.
*778 TATE, J., concurs in the result and assigns reasons.
DIXON, J., dissents.
CALOGERO, J., concurs in the result.
BARHAM, Justice (dissenting).
Prior to trial, defendant requested the right to inspect and examine the Ruger pistol and bullet alleged to have been used in the murder in order that a ballistics test could be made by an expert of his choosing, under guidelines set out by the court. This request was denied, and a bill was reserved to the ruling.
In State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), this Court ordered the trial court to permit the independent examination of evidence, prior to trial. We also said the trial court would be required to specify time, place and manner of making such examination, and to prescribed just terms and conditions for same. In my dissent in State v. Jones, 263 La. 164, 267 So.2d 559 (1972), I noted that examination of physical evidence prior to trial is not discovery. Handwriting, ballistics, and fingerprint experts differ as do most expert witnesses; the only means by which the defendant can defend against expert testimony by the State is to offer expert testimony of his own. The same situation exists here; the defendant sought to have the evidence examined for expert opinion purposes.
Defendant's position is strengthened by the evidence itself. It consisted of a Ruger pistol and a .22 caliber slug removed from the victim's head. The doctor who removed the bullet testified that it was badly damaged and distorted from its normal shape. The ballistics expert for the State, Deputy Sheriff Sharles Ellis, testified that 75% or more of the slug was gone and identification was made on the remaining 25%. These were the principal ties between the defendant and the crime.
Defendant was limited to the cross-examination of the State's two ballistics experts as to this evidence.
The majority contends that the defendant was not without a remedy; they assert he could have moved for a continuance to have experts of his own choosing perform the requisite tests on the gun and slug, after they had been introduced into evidence by the State. This rule has no support in the law. A motion for a continuance would have received no support since it had already been determined by the trial court that there could be no examination of the evidence for expert opinion purposes.
In State v. Woodruff, 281 So.2d 95 (La. 1973), we noted that it was error to refuse a defendant's request for evidence prior to trial, when that evidence was favorable to the accused, and was material to the issue of guilt or punishment. The evidence in question directly bore on the question of guilt; its favorability to the defendant could have been determined by independent examination. A badly damaged, distorted fragment of a slug is a tenuous thread on which to hang a conviction.
Bill of Exceptions No. 1 has merit.
Defendant also contends he was prejudiced when one of his witnesses was not allowed to testify. The witness, Mrs. McPayne, had not attended the trial the first day due to illness, and thus had not heard the judge's instructions as to the rule of sequestration. She appeared in the courtroom at about 10:15 on the second morning of the trial, which Hooper, the bouncer, was testifying. She remained in the courtroom until court was recessed, some 15 minutes.
The majority contends since it was the defense who had asked for sequestration, and they neglected their duty of notifying their absent witnesses of the rule, they cannot now be heard to complain. C.Cr.P. Art. 764 makes the disqualification of witnesses for violation of the sequestration *779 rule discretionary with the judge. In State v. Coleman, 254 La. 264, 223 So.2d 402 (1969), we first interpreted the article in question. There two State witnesses had violated the rule of sequestration and discussed the case with each other and the district attorney. We held that no prejudice resulted to the defendant. In State v. Rouse, 256 La. 275, 236 So.2d 211 (1970) a witness for each side was challenged. The State's witness was allowed to testify, since he had not been in the courtroom during the trial; defendant's witness was disqualified because she had been in the courtroom during the trial. In State v. Edwards, 257 La. 707, 243 So.2d 806 (1971), the State's witness, a young boy who did not understand the significance of sequestration, was allowed to testify after being in the courtroom for a short time. In State v. Jones, 257 La. 966, 244 So.2d 849 (1971), the State's witness was allowed to testify even though she had deliberately ignored the sequestration rule, and had been in court since the beginning of the trial. And in State v. Williams, 271 So.2d 857 (La.1973), the State's witness was permitted to testify even though she had heard the testimony of other witnesses, because the court found she was acting in good faith, and had not been on the original list of State witnesses, but was called in rebuttal.
These are only the recent cases, but it would seem that the discretionary rule is invoked to allow the State's witnesses to testify, while prohibiting the defendant's from exercising the same privilege. Mrs. McPayne's testimony would have been in direct contradiction to that of the bouncer. She would have testified that the defendant had not been in the bar the night before the murder, or that any argument took place between the victim and the defendant. Her testimony was material, relevant and added credence to defendant's story. She should have been allowed to testify. The trial judge abused his discretion in not allowing her to do so.
The conviction should be reversed. I therefore respectfully dissent.
STATE, Justice (concurring).
For the reasons stated by Mr. Justice BARHAM in this dissent, I think pre-trial inspection of the pistol and of the cartridge alleged to have been used in the murder should have been allowed in order to permit an expert selected by the defense to conduct a pre-trial ballistic test to determine whether the pistol was indeed the murder weapon. I can concur in the affirmance only because the demand for independent ballistic tests was not reiterated during the trial, after the gun was introduced.
Admittedly, the better procedure would be to have this ballistic testing done pretrial, rather than interrupt the trial to make hurried arrangements for such testing. Had supervisory review been sought of the failure to allow the pre-trial testing, I believe we should have ordered it.
For the present, however, I am unwilling to reverse in the absence of any showing or contention that the independent ballistic testing was actively sought after the pretrial point was made, or that in fact the state's testing erroneously identified the murder cartridge with the pistol possessed by the defendant. In the absence of any such contention by the defense, I am unable to find that the trial court abused its considerable discretion in this evidentiary matter, or that, if error was committed below, it was not harmless. La.C.Cr.P. art. 920.
Likewise, I think, in fundamental fairness, the non-sequestered witness, Mrs. McPayne, should have been allowed to testify at this murder trial. Her failure to obey the sequestration order is satisfactorily explained as inadvertent and not pre-arranged. The trial jury could satisfactorily evaluate, upon cross-examination, any undue influence on her testimony resulting *780 from her presence during the trial testimony of the preceding witness.
However, since her intended testimony was merely corroborative of her husband's that the defendant was not in the lounge on the night before the shooting, I am unable to say that the majority errs in its characterization of the error, if any, as harmless, although the question is close.
I therefore concur in the result.
NOTES
[1] There is some discrepancy in the briefs filed in this Court as to the numbering of the bills of exceptions. However, we have adopted the order used in the trial transcript and and referred to by the trial judge in his per curiams.