305 So.2d 409 (1974)
STATE of Louisiana
v.
Dennis Charles HOLMES.
No. 55048.
Supreme Court of Louisiana.
December 2, 1974.
*410 Norman A. Pettingill, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
*411 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant was charged by bill of information with armed robbery, R.S. 14:64. He was convicted after trial by jury and was sentenced to 60 years at hard labor.
Defendant appeals, relying upon 10 bills of exceptions.
The record discloses the following:
On March 17, 1972, two black males robbed the Crippled Children's Hospital in New Orleans and escaped with $20,000.00 in cash and checks. The shorter man was armed with a pistol; the taller man (allegedly the defendant) with a sawed-off single shotgun. During the course of the robbery the bandits were seen by five employees of the hospital.
Some two weeks later, two New Orleans police officers were patrolling in Central City. While at a stop sign, the officers heard what they thought was a gun shot; on looking down the street, they observed approximately five people standing around a pick-up truck. The people began to run and the officers gave chase. Losing sight of most of the fleeing individuals, the officers concentrated on catching the defendant.
The defendant ran up a three flight stairway. As the closest officer was on the second floor, he heard a loud noise which sounded like metal striking metal. As he reached the top of the stairs, he saw the defendant on the landing. The officer grabbed the defendant's hands and frisked him. A minute or so later the second officer arrived. Acting upon the suggestion of the first officer, the second officer looked into a garbage can which was on the landing. He discovered a sawed-off single shot shotgun. At this time, the defendant stated that someone else had dropped the gun and he had picked it up and run with it.
The police took the defendant back to the police car and drove to the spot where the pick-up had been. The truck and all the people were gone. The defendant was then placed under arrest and given the warnings required under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).
The next day the police officers reviewed a list of recent robberies and came across the robbery of the Crippled Children's Hospital. The defendant fit the description which had been given in the case. Thus, the police officers assembled seven photographs, including one of the defendant, and proceeded to the hospital.
The pictures were shown to the four female victims. A short while later on that same afternoon, a detective came to the hospital. Not being aware that the victims had already viewed the seven photographs, the detective had the ladies go through another photo identification, employing the same photographs which had earlier been exhibited to the same four females. On the next day, the photographs were shown to the male victim of the crime. A few days later, all five victims attended a lineup. Some time later, all of the victims saw the defendant at hearings on pre-trial motions.
Bills of Exceptions Nos. 1 and 5.
These bills are argued together. Bill No. 1 was reserved when the trial court denied defendant's motion to suppress the inculpatory statement. Bill No. 5 was taken during trial when the court ruled the statement was freely and voluntarily made.
*412 The facts concerning the inculpatory statement are outlined above. Defendant has abandoned his factual allegation that he admitted possession of the gun only after intimidation by the police officer. Defendant now urges that the statement is inadmissible because he had not received his Miranda warnings.
This argument has no merit. The statement was voluntered by the defendant and was not the result of police interrogation. Therefore, it was admissible. State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972).
Bills of Exceptions Nos. 2 and 6.
Bill No. 2 was reserved to the trial court's denial of defendant's motion to suppress the shotgun. Bill No. 6 was taken when the shotgun was introduced into evidence.
Defendant does not contend that the gun was seized in an unconstitutional manner. His argument is that the relevancy of the shotgun was established only by the defendant's assertedly inadmissible inculpatory statement discussed in Bills of Exception Nos. 1 and 5, that upon the officer's finding the shotgun in a garbage can at the third floor landing, defendant had volunteered that some one else had dropped the gun and he had picked it up and run with it. Therefore, defendant contends that the gun was the "fruit of a poisonous tree." Since we find the statement admissible, the defendant's argument fails, and we need not pass upon whether the gun should have been excluded were defendant's statement held to be inadmissible.
These bills have no merit.
Bills of Exceptions Nos. 3, 4 and 8.
These bills relate to the identification of the defendant. Bill No. 3 was reserved during the hearing on the motion to suppress when the trial court denied defense counsel's request that his client be allowed to wear a hood, ostensibly to prevent a compounding of suggestiveness. Bill No. 4 was reserved to the court's denial of defendant's motion to suppress the identification. Bill No. 8 was reserved during trial to the introduction into evidence of the photographs shown to the victims for identification purposes.
The thrust of defendant's bills is that the identification procedures were impermissibly suggestive under Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1960). Defendant does not argue that any one of the procedures was suggestive, but that the fact that the victims viewed the defendant four times prior to trial was in and of itself suggestive. As framed in the defense brief:
". . . the entire identification procedure was so impermissibly suggestive that the subsequent in-court identifications of the defendant were not independent, but were rather based on the memory of the defendant's photograph and that the suggestion implanted by it was reinforced at each subsequent stage of the identification procedure, hardening into certainty by the time of the trial."
We do not find that the identification procedures present reversible error. Four of the five witnesses did participate in two photographic lineups. But the second showing was a simple duplication, as the photographs used at that time were the identical ones used in the first showing. And there is no allegation that either of these photographic lineups was conducted in a suggestive manner. In fact, the record reveals the opposite. On both occasions, the witnesses viewed the photographs independently and obeyed the officer's request not to speak to one another.
This simple duplication has not been shown to have created any prejudice and *413 for our purposes the two photographic lineups might be viewed as a single one.
We also find no error in the fact that a lineup was conducted after the photographic showings. The United States Supreme Court, with Justice Harlan speaking for the court, suggested in Simmons, cited supra, that a better procedure in cases involving multiple witnesses is to show photographs to only one or two of the witnesses. If a suspect is identified, he can then be "displayed to the other eyewitnesses in a lineup, thus permitting the photographic identification to be supplemented by a corporeal identification, which is normally more accurate."
But Simmons does not stand for the proposition that it is impermissibly suggestive to allow witnesses to participate in both a photographic showing and a lineup. While we are not completely comfortable with the number of sequential lineups, we do not believe that they were impermissibly suggestive, particularly since no single lineup was conducted in anything but an exemplary fashion by the officers involved. Furthermore, the record indicates that the number and quality of the various identifications were presented to the jury, with the defendant having an opportunity to argue any possible adverse effect, in terms of reliability of the in-court identifications, that such procedure may have had.
The defendant has not presented any specific arguments relative to the denial of his request to wear a hood at the hearing of the several motions and to the overruling of his objection to the introduction of the photographs shown to the victims. We find no error in the trial court's not permitting defendant to wear a hood. Likewise, the trial court was correct in permitting the photographs used in the lineup to be admitted into evidence to demonstrate, in part, the fairness of that procedure.
These bills have no merit.
Bill of Exceptions No. 9.
This bill was reserved when the trial court refused to allow Veronica Duplecaine, defense witness, to testify. Miss Duplecaine was not allowed to testify because she had violated the sequestration order.
The defense planned to call only two witnessesMrs. Bird, the defendant's sister, and Miss Duplecaine, the defendant's girl friend. Both witnesses violated the sequestration order. Mrs. Bird, whom the trial court allowed to testify, was present during the testimony of the first four witnesses; Miss Duplecaine was present during the entire trial.
Article 764, Code of Criminal Procedure, governs sequestration. It provides:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
The jurisprudence interpreting the statute has held that the trial court has the discretion to prohibit a witness who has violated the sequestration order from testifying. State v. Edwards, 257 La. 707, 243 So.2d 806 (1971); State v. Rouse, 256 La. 275, 236 So.2d 211 (1970); State v. Coleman, 254 La. 264, 223 So.2d 402 (1969).
The purpose behind the order of sequestration is to encourage development of the true facts of the case by preventing witnesses from being influenced by the testimony of other witnesses and by allowing for effective cross-examination. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971), appeal dismissed, cert, denied, 404 U.S. 805, 92 S.Ct. 101, 30 L.Ed.2d 38 (1971); State *414 v. McAllister, 253 La. 382, 218 So.2d 305 (1969), vacated in part on other grounds, 408 U.S. 934, 92 S.Ct. 2854, 33 L.Ed.2d 748 (1971); State v. Lewis, 250 La. 876, 199 So.2d 907 (1967). The trial judge correctly states in his per curiam to this bill of exception that to have allowed Miss Duplecaine to testify would have violated the very reason for the sequestration of witnesses. Through the testimony of Mrs. Bird and Miss Duplecaine, the defendant desired to establish his alibi, which was that he and Miss Duplecaine had been at Mrs. Bird's home at the time of the robbery. Miss Duplecaine was present in court during the testimony of Mrs. Bird and had witnessed the cross-examination of that witness by the State. For this reason, the trial judge had a sound reason for excluding her testimony.
This bill has no merit.
Bill of Exceptions No. 10.
This bill was reserved to the denial of defendant's motion for a new trial. The written motion was premised on the grounds that the verdict was contrary to the law and evidence and that bills of exceptions reserved during trial show prejudicial error.
The defendant has abandoned these grounds on appeal. He now argues that he is entitled to a new trial because of a defective bill of information. The defendant is raising the issue for the first time before this Court.
We find that the defendant has waived any objection he may have had by failing to challenge the regularity of the bill of information at the trial level. This Court on numerous occasions has reviewed the validity of bills of information, although the issue was not presented by a properly perfected bill of exception, when the error was one patent on the face of record and thus properly reviewable under Article 920 of the Code of Criminal Procedure. See State v. Clark, La., 288 So.2d 612 (1974); State v. Raby, 259 La. 909, 253 So.2d 370 (1971); State v. LeFleur, 258 La. 977, 249 So.2d 101 (1971). The instant case, however, does not present such a situation. The defendant's complaint, that the individual named in the bill of information was not robbed of anything of value from her person or in her immediate control, is not an error patent on the face of the record, as its resolution would require this Court to review the evidence and make a factual determination.
Accordingly, we find that this bill presents nothing for review.
The conviction and sentence are affirmed.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
At the hearing on the motion to suppress the identification testimony of five prospective witnesses whom the State was expected to call at trial the defendant moved, prior to the entry into the courtroom of any of these witnesses, that he be allowed to wear a mask for the duration of the hearing. The stated reason for the request was to prevent the witnesses' in-court viewing of the defendant from bolstering their previous photographic and line-up identifications. The defense request was refused and the witnesses subsequently viewed the defendant while defense counsel questioned each of them regarding the earlier occasions upon which they had viewed photographic and corporeal line-ups wherein the defendant was represented or present.
It was established at the hearing that four of the five prospective witnesses had twice participated in photographic line-up procedures and had once viewed the defendant in a corporeal line-up. The defendant was the only subject common to both the physical and photographic line-ups. Of course, all four of these witnesses, along with the fifth witness, had an unfettered *415 opportunity to view the defendant at the time of the pre-trial hearing. The fifth witness viewed photographs which included that of the defendant at least once, and participated in a line-up wherein defendant was physically present. Again, the defendant was the only common subject represented in both the photographs and the physical line-up.
The record establishes that the following identifications were made by the witnesses at the various procedures:

Witness 1st Photo 2nd Photo Physical Pre-Trial
------- Viewing Viewing Line-Up Hearing
 -------- ---------- --------- ----------
Whitley Unable to Identified Made a Not asked.
 identify. defendant. very confused
 identification
 (identified
 another).
Wightkin Unable to Identified Unable to Unable to
 identify. defendant. identify. identify.
Kerber Unable to Unable to Unable to Identified
 identify. identify. identify. defendant.
Hayden Identified Identified Identified Identified
 defendant. defendant. defendant. defendant.
Newman Unable to _____ Identified Identified
 identify. defendant. defendant.
 (Identified
 another).

At the trial on the merits, all of the above-listed witnesses identified the defendant except the witness, Wightkin, who was not called to testify.
Like the majority, I am not "completely comfortable with the number of sequential lineups"; and I further believe that there is merit to defendant's argument that the various repeated identification procedures amount to impermissible suggestiveness. The chart set forth above, which tracks the ability of each of the witnesses to identify the defendant as the perpetrator of the crime charged, clearly demonstrates the substantial likelihood that the trial identifications of all but one witness were effected through the repetitious identification procedures.
Because I believe that three of the four trial identifications were fatally tainted, I am of the opinion that the trial court's refusal to suppress the identifications constituted reversible error.
I respectfully dissent.