**Larry K. BARNARD,**
**Petitioner-Appellant,**

v.

**C. Murray HENDERSON, Warden,**
**Louisiana State Penitentiary,**
**Respondent-Appellee.**

No. 74–2894.

United States Court of Appeals,
Fifth Circuit.

June 12, 1975.

Raymond D. Fuljenz, Lake Charles, La., for petitioner-appellant.

William J. Guste, Jr., Atty. Gen., Baton Rouge, La., Barbara B. Rutledge, Asst. Atty. Gen., New Orleans, La., Frank T. Salter, Jr., Dist. Atty., 14th Judicial Dist. Crt., Charles W. Richard, Asst. Dist. Atty., Lake Charles, La., for respondent-appellee.

Before BROWN, Chief Judge, and GODBOLD and CLARK, Circuit Judges.

BROWN, Chief Judge:

In this appeal of a habeas denial Larry Barnard attacks his Louisiana murder conviction because a witness with crucial testimony on his behalf was excluded due to her inadvertent violation of the rule regarding sequestration of witnesses and because he was denied the opportunity to have his own ballistics expert examine the alleged murder weapon. We reverse.

Barnard was convicted by a jury of the April 6, 1972 murder of Rex Emile Lanier. The Supreme Court of Louisiana affirmed. State v. Barnard, La., 1973, 287 So.2d 770. At the trial Kenneth Hooper, the bouncer at Rick's Place, a Lake Charles, Louisiana lounge, testified that Lanier and Barnard had an argument about an automobile in the lounge the night before the murder and Barnard threatened to kill Lanier.

The State relied heavily on this testimony to show Barnard's intent. In direct contradiction to Hooper's testimony, the lounge's bartender and manager, Gay McPayne, stood ready—and as her affidavit attests still stands ready (Petr's Ex. # 3)—to testify Barnard never came into Rick's Place at all the night the argument was said to have taken place. The jury never heard this testimony.

On the opening day of the trial defense counsel invoked the rule regarding sequestration of witnesses—familiarly known as the "rule". McPayne missed this first day of the trial due to illness.

Her absence was unnoticed. Unaware of the strictures of the rule, she entered the courtroom on the third morning of the trial and was present for about 15 minutes of testimony before a recess was had and her presence was discovered. When the defense attempted to call McPayne to testify, the prosecution objected that she had violated the rule. The Court sustained the objection and she was not allowed to testify.

In Holder v. United States, 1893, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010, the Supreme Court held that although generally a witness may not be disqualified for disobeying the rule, the trial court may under "particular circumstances" exclude him within its sound discretion. We defined these "particular circumstances" in Braswell v. Wainwright, 5 Cir., 1972, 463 F.2d 1148, 1154 to be the "knowledge, procurement, or consent" of the defendant or his counsel. A similar approach has been taken in other Circuits. United States v. Kiliyan, 8 Cir., 1972, 456 F.2d 555; Taylor v. United States, 9 Cir., 1967, 388 F.2d 786; United States v. Schaefer, 7 Cir., 1962, 299 F.2d 625, cert. denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497. It is undisputed that McPayne's violation of the rule was inadvertent and not done with the "knowledge, procurement, or consent" of Barnard or his counsel.

Nevertheless, the District Judge in denying Barnard's habeas petition ruled that the Braswell test was not applicable because McPayne's testimony was merely cumulative of that of her husband who also testified that he had heard no argument between Lanier and Barnard in the lounge that night. We disagree. Mr. McPayne stated that he did not arrive in Rick's Place until 10:00 that evening. Hooper testified that the argument took place between seven and nine o'clock. The jury would clearly have been justified in coming to the conclusion that the reason Mr. McPayne did not see the argument was not because it never occurred but rather because it took place before he arrived. Mrs. McPayne, on the other hand, was in the lounge the whole evening and would tes-

tify that she could not have missed the argument if it took place. The exclusion of this testimony very clearly prejudiced Barnard. Whether it would be sufficient to tip the constitutional scales were it standing alone we need not decide. Together with the ballistics problem we next discuss we could not approve such exclusion on any retrial.

Barnard's second contention also has merit. Prior to the trial he moved for permission of the Court to allow inspection of the murder weapon and bullet by a ballistics expert of his own choosing. That this was not a frivolous request is evident since one of the most damaging pieces of evidence against Barnard was the identification of the murder bullet as having been fired by a .22 Ruger pistol traced to his possession. Seventy-five percent of this slug was destroyed and the identification was made on the remaining 25%. This fact alone raises the possibility that had Barnard been assisted by a ballistics expert of his own he may have been able to shake the identification testimony of the State's experts. Barnard's motion was denied.

Under Louisiana procedure pre-trial discovery of evidence in the hands of the prosecution is limited to the defendant's confessions and to narcotics. State v. Barnard, 287 So.2d at 773. In affirming Barnard's conviction the Supreme Court of Louisiana said that, although *Brady* production of evidence is required where the evidence is favorable to the accused, there had been no showing that an examination of the murder weapon and bullet would be favorable to Barnard. *Id.* at 774. As we stated in Williams v. Dutton, 5 Cir., 1968, 400 F.2d 797, 800 due process cannot be sidestepped by such a facile distinction.

■ The question is not one of discovery but rather the defendant's right to the means necessary to conduct his defense. Justice Barham of the Supreme Court of Louisiana pointed out in his dissent to the majority opinion in *Barnard* that "the only means by which the defendant can defend against expert testimony by the State is to offer expert

testimony of his own." 287 So.2d at 778. We agree. Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion.

■ Neither are we persuaded by the State's contention that Barnard waived his right to complain of the denial of this request to examine the weapon by failing to move for a continuance when the pistol was placed into evidence.

At least one learned student of the law and procedure of Louisiana—Justice Barham—has stated that such a motion would have been unsuccessful. State v. Barnard, 287 So.2d at 778 (Barham, J., dissenting). Barnard had already attempted to obtain access to the gun and bullet for expert inspection and his motion was denied. There is no showing that he had reason to believe that a second attempt would be any more successful. It is a familiar principle that no waiver occurs due to a defendant's failure to object where a reasonable person would expect that objection to be fruitless. See, e.g., our cases holding that failure to object to trial in prison garb under such circumstances does not constitute waiver. Williams v. Estelle, 5 Cir., 1974, 500 F.2d 206, 208; Hernandez v. Beto, 5 Cir., 1971, 443 F.2d 634, 636–37. This would not be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461.

■ But we need not rest decision on non-waiver. In view of the earlier unsuccessful effort to obtain inspection upon which to base countervailing expert opinion the asserted practice of allowing a continuance—more accurately, an interruption of a trial then in progress—has built-in hazards so prejudicial to the accused in the eyes of the jury that it does not under the circumstances of this case present a viable alternative to pre-

trial discovery going to the very heart of the case and fundamental due process fairness.

Reversed.