321 So.2d 491 (1975)
STATE of Louisiana
v.
Gregory WHITE.
No. 56519.
Supreme Court of Louisiana.
November 3, 1975.
*492 John P. Nelson, Jr., Patricia Saik, Nelson, Nelson, & Lombard, Ltd., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Defendant, Gregory White, indicted for Second Degree Murder, was tried, found guilty, and sentenced to imprisonment for life, without benefit of probation, parole, or suspension of sentence for twenty years. Defendant appeals, relying upon seven assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges that he was denied his Sixth Amendment right to have counsel present during post-arrest questioning and that the court erred in denying his pretrial motion to suppress inculpatory statements.
Police officers testified that defendant was advised of his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights on three occasions: in the house where he was arrested; in the car on the way to headquarters; and on the day following the crime in the Police *493 Homicide Office. Defendant concedes that he was advised of his rights.
Defendant complains mainly that the officers failed to ask him if he wanted to call a lawyer. He alleges that the officers denied his request to call an attorney. The officers testified that the defendant made his request while in the Homicide Office and that telephone calls were only allowed at Central Lockup. The officers further testified that defendant was advised that he could call his lawyer as soon as he returned to Central Lockup. Defendant contends that this delay denied his right to have counsel present at crucial post-arrest questioning. LSA-C.Cr.P. art. 230; Miranda v. Arizona, supra.
The testimony is in conflict. Defendant testified that not only was he questioned after his request to call an attorney was denied, but also that he was beaten and punched by the officers. The officers denied the beating and testified that when defendant refused to waive his rights and requested counsel, interrogation ceased. All officers testified that the inculpatory statement, "I threw the gun in the river," was spontaneous and unsolicited and that no questions were asked regarding the gun after defendant volunteered the statement.
Defendant's refusal to sign a waiver of rights and to answer questions does not preclude him from making an admissible spontaneous statement. State v. Lewis, La., 315 So.2d 626 (1975). Further, defendant need not be advised of the right to use the telephone. See State v. Cripps, 259 La. 403, 250 So.2d 382 (1971).
The trial court held that the defendant, on two occasions after being advised of his rights, volunteered the statement: "I threw the gun in the river." The voluntariness of a confession is a question of fact, and the ruling of the trial court will not be disturbed on appeal unless it is clearly contrary to the evidence. State v. Sims, La., 310 So.2d 587 (1975). Admissibility of an inculpatory statement is for the court to determine, and its weight is to be determined by the jury. According to defendant's testimony, he made no statements whatsoever to the officers. This testimony raises a factual issue, involving credibility, for the jury's determination.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant alleges that the State failed to prove that the oral statement, supra, was voluntary and that the court erred in allowing the State to offer additional evidence of its voluntary nature on rebuttal.
In its case in chief, the State offered the general testimony of the police officers to the effect that no force or coercion was used to secure a confession. When the defendant took the stand, he testified that he was struck by police officers. He pointed out the officers. On rebuttal, the officers refuted these specific charges.
In our opinion, the trial judge did not abuse his discretion in allowing the rebuttal testimony. See State v. Peters, La., 315 So.2d 678 (1975); State v. Monroe, La., 305 So.2d 902 (1974); State v. Honeycutt, 216 La. 610, 44 So.2d 313 (1950).
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Prior to trial, defendant filed a supplemental prayer for oyer, which sought, among other things, "to examine all gun pellets that may have been recovered or retrieved by the police in their investigation of the death of Willie Green." The defense alleges that such an inspection was crucial, since the murder weapon was never recovered. Assignment of Error No. 3 complains of the trial judge's denial of the request.
*494 The trial judge relied upon this Court's decision in State v. Barnard, La., 287 So. 2d 770 (1973). Since that decision was handed down, the United States Court of Appeals for the Fifth Circuit set aside the conviction, holding that the denial of defendant's request for a pretrial examination of the bullet in that case was a denial of due process. See Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975).
Although decisions of the intermediate federal courts are not binding upon this Court, they are persuasive.
In Barnard v. Henderson, supra, the United States Court of Appeals stated:
"Prior to the trial he moved for permission of the Court to allow inspection of the murder weapon and bullet by a ballistics expert of his own choosing. That this was not a frivolous request is evident since one of the most damaging pieces of evidence against Barnard was the identification of the murder bullet as having been fired by a .22 Ruger pistol traced to his possession. Seventy-five percent of this slug was destroyed and the identification was made on the remaining 25%. This fact alone raises the possibility that had Barnard been assisted by a ballistics expert of his own he may have been able to shake the identification testimony of the State's experts."
The present case is distinguishable. In the present case, the bullets were not badly damaged, permitting a quick comparison under a dual microscope at the trial. Defendant made no request for examination at the trial. In the present case, moreover, the guilt of defendant was established by eyewitness testimony.
In State v. Collins, La., 308 So.2d 263 (1975), this Court set forth the general rule as follows:
"As a general proposition the State is not required to produce the physical evidence it intends to use at the trial. Exceptions to this rule have recognized the right of a defendant to view and copy his written confession in the possession of the prosecutor. State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); to obtain production of a taped confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); or some of the confiscated narcotic evidence in a narcotic prosecution, State v. Migliore, 261 La. 722, 260 So.2d 682 (1970). When proper allegations support a finding that the defendant acted in self-defense and specifies that the weapon sought was used by the alleged victim against the defendant, supporting a claim of self-defense, we have required production of the weapon by the State. State v. Woodruff, 281 So.2d 95 (La. 1973)."
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant alleges that the trial court erred in denying his motion to suppress a box of bullets seized from the closet in which the defendant was found at the time of his arrest. Defendant argues that the seizure does not fall into any exception allowing a lawful search without a warrant.
At the hearing on the motion to suppress, the State introduced evidence that the arresting officer received a call complaining of the discharge of firearms at the Toledano apartment of Debra Williams. Debra, an eyewitness, identified the defendant as the perpetrator. The officers who responded to the call learned that the defendant was personally known to Debra and that they could possibly find him at his home. The officers and Debra went to that address. On the way to the defendant's home, the officers learned that defendant was wanted for a murder. Defendant's wife answered the door. The officers explained that they were looking for defendant who was wanted for attempted murder and possibly murder. She denied *495 defendant's presence and freely gave her consent to the search of the house. The officers found defendant hiding in a closet, arrested him, and contemporaneously with the arrest, found a box of gun pellets in the closet.
Defendant urges that the officers did not have an arrest warrant when they searched the closet and found the box of bullets. He contends that his wife's consent to search for defendant ended as soon as defendant was discovered. He also urges that as soon as he was discovered, he was arrested and placed in handcuffs; therefore, the officers were no longer in danger from possible physical reprisal and a search of the closet could not be deemed incident to arrest.
The trial court properly denied the motion to suppress. Mary White, defendant's wife, consented to the entry to search for defendant. The officers, supplied with the information given by the eyewitness, Debra Williams, to her attempted murder by defendant, coupled with the information received prior to entry that the defendant was also wanted for a murder, established probable cause to arrest. The search of the closet, in which defendant was hiding, was incidental to the lawful arrest. The seizure of the box of gun pellets from the closet occurred contemporaneously with the arrest of the suspected felon in the house. The search and seizure were, therefore, valid. State v. Cloud, Blakes and Cedan, La., 319 So.2d 793 (1975); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967).
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant objected to admitting into evidence the bullet removed from the victim's head during the autopsy. Dr. Welch, the pathologist, did not mark the bullet and could not identify it. Defendant alleges that admitting it into evidence, over his objection, is error.
Defendant's allegation is without merit. Evidence offered at trial shows that an officer from homicide, Martin Alonzo, was present when Dr. Welch removed the bullet; that the doctor handed the bullet to Alonzo, who marked it with his initials, M.A., and turned it over to Robert Townsend, the senior firearms examiner of the crime laboratory. Defendant admits that both Alonzo and Townsend identified the bullet by means of their initials. Defendant contends, however, that the doctor who performed the autopsy could not identify the bullet. He urges that the court erred in finding that a continuous chain of custody was established and that a proper foundation had been laid for admitting the bullet into evidence.
Identification of a physical object can be either by visual means or by a proper chain of custody. State v. Freeman, La., 306 So.2d 703 (1975); State v. Isaac, 261 La. 487, 260 So.2d 302 (1972); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). In the present case, the doctor who removed the bullet testified that he delivered it to the police officer, Martin Alonzo. Alonzo testified that he marked his initials on the bullet and, later, gave it to Townsend. Townsend testified that he could identify the bullet by his initials and that he retained possession of the bullet until it was offered into evidence at the trial. A continuous chain of custody was established, and the court correctly held that a proper foundation was laid for its admission into evidence. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. State v. Mitchell, La., 311 So.2d 888 (1975).
Assignment of Error No. 5 is without merit.

*496 ASSIGNMENT OF ERROR NO. 6
Defendant alleges that the testimony of the State's expert witness, Officer Robert Townsend, that a comparison of S-1, the bullet removed from the victim, and S-7, the bullet taken from the Toledano Street address, showing they were fired from the same gun, should have been stricken from the record as the best evidence would have been a photograph of the two pellets.
Townsend was qualified as a firearms expert and was accepted as such by the defendant and the court. LSA-R.S. 15:466. During cross-examination, he testified that, although there was a camera attached to the microscope he used to examine the pellets, he did not photograph what he had seen through the dual microscope. Townsend gave his opinion as an expert witness on the comparison of these two gun pellets from his observation under the microscope. This is sufficient. LSA-R.S. 15:464-465. The weight to be given to the evidence is to be determined by the jury.
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant alleges that the district court erred in overruling his motion for new trial.
Defendant raises the following issues in the motion: that the verdict is contrary to the law and the evidence; that the overruling of the motion to suppress the confession and the motion for pretrial examination of the gun pellets prejudiced the accused. The latter two contentions have been previously disposed of in defendant's prior assignments of error and will not be discussed herein. His remaining allegation, that the verdict is contrary to the law and the evidence, presents nothing for our review. State v. Gilbert, La., 286 So.2d 345 (1973).
Assignment of Error No. 7 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., dissents.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice (dissenting).
I believe that the trial court's refusal to allow defendant's expert to examine the gun pellets which were retrieved by the police in investigating the crime was reversible error. The majority opinion attempts to distinguish the case of Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975) which found error in a trial court's refusal to allow an expert for defendant to inspect the murder weapon and bullet. While this federal Fifth Circuit opinion is not controlling on this Court, I believe the principles therein enunciated are correct and should be applied here. In Barnard, the Fifth Circuit said:
"Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion." 514 F.2d at 746.
I feel that the requested inspection was crucial to defendant's preparation of his defense. Since the murder weapon was never recovered, one major link between the defendant and the murder was the gun pellets which were recovered by the police. A few hours before the murder, defendant allegedly fired a gun. The state ballistics expert compared the pellets fired at that time with the pellets taken from the victim. He found that both sets of bullets were fired from the same gun and testified that the test he conducted was so exact that two experts would never disagree. Had *497 the state provided the defendant an opportunity to inspect the pellets prior to trial, the defense could have verified the state expert's finding or perchance disagreed with such finding and produced its own expert witness to weaken or discredit the state's case. I feel that defendant was prejudiced by his inability to have his own expert inspect the pellets so that he might testify whether both pellets were absolutely from the same gun, and whether the tests were subject to varying expert opinion. Due process requires that the defendant be able to inspect this critical piece of evidence prior to trial.
I therefore dissent.