325 So.2d 812 (1976)
STATE of Louisiana
v.
Robert HOWARD.
No. 56861.
Supreme Court of Louisiana.
January 19, 1976.
*814 Wilson R. Ramshur, Willis & Ramshur, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., Cynthia Picou Branton, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
The defendant Howard was convicted of murder, La.R.S. 14:30, and sentenced to life imprisonment. Upon appeal, eight assignments of error are urged.
The defendant was charged with the murder of James Davis at about 6:45 A. M. on April 20, 1971, at the Louisiana State Penitentiary at Angola. Both the defendant and the victim were inmates. The killing occurred during a series of fights which broke out after some seven hundred inmates finished breakfast and gathered outside a mess hall. The State's case essentially consisted of the testimony of three correctional officers who stated they saw the defendant, Howard, chase and fatally stab the victim, Davis, after he had slipped and fallen to the ground. Howard admitted stabbing the victim but contended he had done so in self-defense before chasing him. According to the defendant's version, which was corroborated to some extent by the testimony of other inmates, the stabbing occurred earlier during an attack upon Howard by Davis in which Howard had taken the knife from Davis. Howard contended that he chased Davis after the stabbing, and both stumbled and fell with the knife harmlessly striking the ground.

ASSIGNMENT OF ERROR NO. 1
Defendant urges in this assignment of error that the trial judge erred in failing to require the State to divulge the details of the State's evidence regarding the commission of the crime. Defendant concedes that it is well settled that defendant is not entitled to the pre-trial discovery of the details of the State's evidence. State v. Thomas, 310 So.2d 517 (La.1975); State v. Browning, 290 So.2d 322 (La.1974). However it is contended that an accused in a criminal prosecution is now entitled to discover such evidence under the provisions of Art. I, § 13 of the La.Constitution of 1974, which in pertinent part, provides:
"* * * In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him * * *."
Art. I, § 10 of the La.Constitution of 1921, in pertinent part provided:
"In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him * * *."
Neither the slight change in language nor the debates at the convention evince an intention to overrule existing jurisprudence. See Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 44 (1974). There is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant contends that the trial court erred in rescinding its order for a preliminary examination. An indictment was found by the grand jury on September 14, 1973, and one judge of the district court on December 4, 1974, granted a preliminary examination to be held on January 9, 1975. However, the matter did not come up on that date, and on January 16, 1975, another judge of the same court rescinded the order for the preliminary examination as having been improvidently granted. Defendant argues that the court abused its discretion by depriving him of a procedural device designed *815 to assist him in his defense and that, once ordered, the preliminary examination should not have been withdrawn from him.
When the motion for a preliminary examination is made before the finding of an indictment, the court is mandated to grant it in felony cases. Art. I, § 14 La.Const. (1974). However, when it is made after the finding of the indictment, the matter is discretionary. After the defendant has been indicted by a grand jury, the court may rescind its order for a preliminary examination. La.C.Cr.P. Art. 292 (amended by Acts 1974, ex.sess. No. 16, § 1, effective January 1, 1975). This rule is consistent with the due process requirements of the Fourteenth Amendment of the United States Constitution, in that a valid indictment returned by a properly constituted grand jury conclusively determines the existence of probable cause. See Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Therefore, the district court was justified in rescinding its order granting the preliminary examination.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
This assignment was made because of the denial of a motion to quash grounded on the undue length of time, approximately three and three-fourths years, between the commission of the offense on April 20, 1971, and the trial held January 16, 1975. In his per curiam the trial judge explained that the prosecution was originally instituted in 1971, but because of questions pertaining to the composition of the former grand jury, a new indictment was returned and filed on September 14, 1973. Defendant escaped from the penitentiary on December 3, 1972, was recaptured on November 20, 1973, escaped again on September 1, 1974 and was recaptured the same day. The trial was initially set for April 9, 1973 but was not held because of defendant's absence.
The Code of Criminal Procedure provides that no trial shall be commenced in capital cases after three years from the date of institution of the prosecution. La. C.Cr.P. art. 578. The three year limitation period is applicable since defendant was prosecuted for murder, which has been classified as a capital offense for purposes other than the imposition and execution of the death penalty. State v. Holmes, 263 La. 685, 269 So.2d 207 (1972). However, the three-year period of limitation established by the article was interrupted and commenced to run anew from the end of each period of escape. La.C.Cr.P. art. 579. State v. Montgomery, 257 La. 461, 242 So. 2d 818 (1970). Thus, regardless of whether the prosecution is considered to have been instituted in 1971 or in 1972, the case was brought to trial within the limitation set by statutory law, due to the interruptions of the period caused by defendant's escapes.
Nevertheless, the statutory law does not provide the only criterion which must be met by the State in affording a defendant his constitutional right to a speedy trial. State v. Moore, 300 So.2d 492 (La.1974); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972). Guidelines for determining whether a criminal defendant has been denied his federal constitutional right to a speedy trial were set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors to be considered are the length of the delay, the reasons for the delay, the resulting prejudice to the defendant, and the defendant's assertion of his right to a speedy trial. State v. Moore, supra.
Although the length of the delay in the instant proceedings was considerable, much of it was due to defendant's own actions, and the record is devoid of any attempt by defendant to assert his right to a speedy trial. Defendant argues that he *816 was unable to produce some fifty witnesses because of the shift and change of the prison population during the long delay. However, he did not cause any subpoenas to issue which were not served, and he failed to identify any particular witness whose presence was unobtainable due to the delay. Under all of the circumstances we conclude that the defendant was not denied his constitutionally guaranteed right to a speedy trial.
We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 4
On the day of the trial defendant orally moved for inspection of the alleged murder weapon. The trial judge denied the motion for the reason that it came too late. The defendant candidly argues that we should extend our previous rulings and hold that a refusal to allow discovery and inspection of physical evidence constitutes a denial of due process.
As a general proposition the State is not required to produce the physical evidence it intends to use at the trial. State v. Collins, 308 So.2d 263 (La.1975). Exceptions to this rule have recognized the right of a defendant to view and copy his written confession in the possession of the prosecutor, State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); to obtain production of a taped confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); or some of the confiscated narcotic evidence in a narcotic prosecution. State v. Migliore, 261 La. 722, 260 So.2d 682 (1970).
In State v. Woodruff, 281 So.2d 95 (La. 1973) another exception of uncertain dimensions was created. In that case the defendant, who relied solely on a claim of self-defense in a murder case, was denied information sought by bill of particulars concerning a gun, which was not the murder weapon, that may have been in the victim's possession at the time of the slaying. Although the State in its opening statement and in its presentation of the State's case disclosed the existence of the gun and its location in relation to the victim's body, this Court held that the trial court's refusal to order production of the information sought constituted a denial of due process in violation of the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). In those cases, the United States Supreme Court held that it is a denial of due process for the prosecution to suppress evidence, which was not introduced at trial, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Thus, the Woodruff case may represent an extension of these decisions since it held that later introduction of material physical evidence favorable to the accused could not cure the deprival of defendant's rights effected by refusal of pre-trial discovery. The majority opinion reasoned that had the State complied with the bill of particulars defendant may have been able to develop additional evidence that would indicate the victim owned or had possession of the gun.
The circumstances of the instant proceeding do not present the same possibility of prejudice to the defendant's rights. The prosecution evidence consisted of eyewitnesses who testified they saw the defendant chase the victim across the prison grounds and stab him. Defendant admitted these facts except he contends that he took the weapon away from the victim, stabbed him with it in self-defense, and then chased him in an unsuccessful attempt to stab him again.
On the morning of the trial the defendant first moved for production of all of the State's evidence "to be used in the trial so defendant may have an expert inspect the evidence". He later limited his request for an inspection to the knife without stating the nature of the inspection. The weapon was introduced at trial by the State and *817 defendant was able to inspect and use it in presenting his case. Had defendant's motion come earlier and specifically stated the necessity and purpose of a pre-trial inspection we might view his objection differently. Under the circumstances, however, it does not appear that the knife was evidence favorable to his case or that the delay of his inspection of it until later in the trial prejudiced his right to use it effectively in presenting his case.
The decision of the United States Fifth Circuit Court of Appeals in Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975) does not mandate a result different from the one we reach here. The holding of that case was that:
"[f]undamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion." 514 F.2d at 746.
In the instant case, the State did not introduce expert testimony regarding the knife. Furthermore, there was no showing that expert examination of the knife alleged to be the murder weapon conceivably could have supported the defendant's theory of the case.
In Barnard, the evidence sought to be inspected by the defendant was the alleged murder weapon and bullet. As noted by the Court of Appeals, "this was not a frivolous request" since the bullet found in the body of the deceased was one of the most damaging pieces of evidence against the defendant. Seventy-five per cent of the bullet had been destroyed, and on the basis of the remaining twenty-five per cent the State's expert testified that the slug had come from a gun in the possession of the defendant. The relevance of expert testimony that might have contradicted that conclusion is apparent. We see great dissimilarity between the facts of Barnard and those involved here.
For these reasons, we find no merit in this assignment.

ASSIGNMENTS OF ERROR NOS. 5 and 7
In these assignments defendant contends the trial court erred in refusing to grant first a directed verdict and then a new trial because the State failed to introduce any evidence to support a jury determination that the alleged killing was not committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Accordingly, defendant asserts that a verdict of manslaughter but not murder was justifiable under the evidence.
It is true that defendant and other inmates testified the victim had attacked defendant before the slaying and caused him to act in heat of blood at the time. However, the jury was entitled to reject their testimony as being untrue. Furthermore, the Code specifically provides that provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled at the time the offense was committed. La.R.S. 14:31(1). A trial judge's denial of a motion for a directed verdict will not be overturned in the presence of any evidence of the elements of the crime charged. State v. Douglas, 278 So.2d 485 (La.1973). Similarly, for appellate purposes, a motion for a new trial based on the lack of evidence to support a conviction does not raise a reviewable question of law unless there is a total lack of evidence to prove the crime or an essential element of it. State v. Collins, 306 So.2d 662 (La.1975). Assuming the victim did provoke defendant's attack, three correctional officers testified that the defendant, who was a larger man than the victim, pursued him across the prison ground a substantial distance before the victim fell and the defendant crouched over him to stab him several times. This constituted *818 evidence from which it could have been inferred that defendant's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. Therefore, we conclude the trial judge's actions in denying the motions for directed verdict and a new trial were adequately supported by the evidence, and that these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 6
The defendant assigns as error the trial court's denial of a motion for a new trial on the ground that the verdict was contrary to the law and the evidence without a review of the sufficiency of the evidence. The trial judge's per curiam states that:
"The court heard the evidence given in this case and did not need to review the evidence to deny the motion for a new trial on the ground that the verdict was contrary to the law and the evidence. The evidence amply supports the jury's verdict."
The transcript of the hearing on the motion for a new trial, which is some 23 pages long, reflects that the trial judge, in fact, did review thoroughly the evidence and the arguments of the defendant. The trial was held on January 16, 1975 and the hearing upon the motion for new trial occurred on January 30, 1975. In view of the short period of time between the trial and the hearing date, as well as the material found in the transcript of the hearing, we are convinced that the trial judge in his per curiam merely intended to indicate that he did not need a transcript of the trial testimony in order to rule upon the motion for a new trial because he had presided at the trial itself.
Accordingly, we conclude that the trial judge did weigh and re-assess the evidence properly before ruling on the motion for a new trial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant assigns as error the failure of the trial court to grant a new trial on the ground that insufficient time was afforded defense counsel for an adequate preparation of his case. Defense counsel was initially appointed in 1971 and the trial was not held until January 16, 1975. Although defendant was absent on escape for approximately one year during this period, and was in the parish prison in New Orleans from November 13 or 14, 1974 until January 8 or 9, 1975, the trial judge determined that there had been ample time for the preparation of a defense.
When the trial court is of the opinion that the ends of justice would be better served by the granting of a new trial although the defendant may not be entitled to a new trial as a matter of strict legal right, it should grant the defendant a new trial. La.C.Cr.P. art. 851(5). Neither the appellate nor the supervisory jurisdiction of the Supreme Court may be invoked to review the granting of or the refusal to grant a new trial, except for error of law. C.Cr.P. art. 858. Although abuse of the trial court's discretion in refusing to grant a new trial is a question of law, great weight must be attached to the exercise of the trial court's discretion which will not be disturbed in the absence of manifest error. State v. Randolph, 275 So.2d 174 (La. 1973).
Under the circumstances presented here we find no error of law or abuse of discretion on the part of the trial judge in denying the motion for a new trial, especially in view of the defendant's failure to move for a continuance or raise this objection before commencing trial.
This assignment of error is without merit.
For the reasons assigned, the conviction and sentence of the defendant are affirmed.