James Walter **CHERRY**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections.**

**Civ. A. No. CA–4–74–70.**

United States District Court, N. D. Texas, Fort Worth Division.

Feb. 25, 1976.

Ted Redington, Staff Counsel for Inmates, Huntsville Unit, Huntsville, Tex., for plaintiff.

John Hill, Atty. Gen. of Texas, Austin, Tex., for defendant.

MAHON, District Judge.

**ORDER**

After making an independent review of the pleadings, files and records in this case, and the findings, conclusions and recommendation of the United States Magistrate,

---

I am of the opinion that the findings and conclusions of the Magistrate are correct and they are adopted as the findings and conclusions of the Court. The findings and recommendation of the Magistrate shall be filed herein as a part of the record in this case.

The Court makes the following additional findings which supplement those of the Magistrate:

The United States Court of Appeals for the Fifth Circuit in *Cherry v. Estelle,* 5 Cir., 507 F.2d 242 (1975) succinctly puts the issue as "this habeas case presents the question of the extent to which the State must provide expert witnesses for indigent criminal defendants" with instructions "that the contentions regarding the denial of the assistance of an independent ballistics expert be reconsidered in light of an examination of the state court record."

The defensive theory of Cherry and his attorneys was that Deputy Sheriff Walthers may have been killed from a bullet from one of the Smith & Wesson revolvers carried by Walthers and his partner Deputy Maddox, who were returning Cherry's fire at the time Cherry allegedly murdered Walthers with a shot from his Rossi revolver.

Three ballistics experts have a part in this case. The initial ballistics expert involved in the case was Floyd Alexander, a Dallas Police Department Lieutenant with thirty-seven years total service and his last sixteen years at the City-County Criminal Investigation Laboratory. At the time of trial Lieutenant Alexander, who had recently retired, testified as a state witness and was cross examined (R.2656–2694). Mr. Alexander testified that in his expert opinion the bullet that was recovered from the body of Deputy Sheriff Walthers was fired from the Rossi pistol (R.2677) of Cherry and could not have been fired from either of the Deputy Sheriffs' Smith & Wesson pistols (R.2671).

The overwhelming evidence against the Defendant-Petitioner consisting of eye witnesses to the shooting, anticipated testimony of third parties as to admissions against interest or confessions of the Defendant, and the expert testimony of Lieutenant Alexander undoubtedly prompted the Defendant's able attorneys to seek an independent ballistics examination which they justified in stating "the question of ballistics is and will be a major factor in the evidence of this cause" (Tr.104) from the District Court in Bell County, Texas. Following a November 26, 1969 pretrial hearing, the Court by appropriate order appointed Mr. Fred Rymer of the Texas Department of Public Safety (Tr.105). The examinations were conducted on December 10, 1969, by Fred R. Rymer, who is the Supervisor of the Firearms Section of the Identification and Criminal Records Division of the Texas Department of Public Safety, and who is known to the Court as eminently qualified in the field of ballistic examinations. No objection was made to his appointment until after he completed his examination and furnished his letter report.

In a December 11, 1969 letter report, Mr. Rymer stated with respect to the bullet recovered from Deputy Walthers' body that he found it was fired from neither of the Smith & Wesson revolvers of the deputies and that he was unable to definitely determine that the bullet was from the Defendant's Rossi revolver, however, he did find that the bullet in question came from the same caliber, possessed the same rifling characteristics, and exhibited a number of common microscopic markings. In conclusion, Mr. Rymer stated that his examination was limited in time but he found nothing to indicate the bullet recovered from Deputy Walthers' body was fired from a different

**550**

I.

|  | | Commission |
| --- | --- | --- |

WILSON E. SPEIR
Director
LEO E. GOSSETT
Assistant Director

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
5805 N. LAMAR BLVD.
AUSTIN 78751

Commission
CLIFTON W. CASSIDY, JR.
Chairman
MARION T. KEY
WILLIAM B. BLAKEMORE, II

LABORATORIES
  BOX 4143
    December 11, 1969

IN REPLY REFER TO
L–100,605/0–261
Murder, 1–10–69
James Walter Cherry, suspect
E. R. Walters & Alvin Maddox,
  victim
Dallas County

Lieutenant Floyd T. Alexander
Dallas Police Department
106 South Harwood
Dallas, Texas 75201

Dear Sir:

On December 10, 1969 you personally submitted one fired Lubaloy bullet (from body of E. R. "Buddy" Walters), one fired metal case bullet (from body of Maddox), one .38 (Special) caliber Rossi revolver, serial #43964, one .38 (Special) caliber Smith & Wesson revolver, serial #C–713973, Model 10–5, and one .38 (Special) caliber Smith & Wesson revolver, serial #187905, Model 36.

You requested that an examination be made to determine from which revolver each bullet was fired.

We have completed our examination and wish to report as follows:

1. It is our opinion that the bullet reportedly recovered from the body of Walters was not fired from either of the submitted Smith & Wesson revolvers.

2. It is our opinion that the bullet reportedly from the foot of Maddox was not fired from the Rossi revolver.

4. It is our opinion that bullet "B" (from Maddox) was fired from the submitted .38 (Special) caliber Smith & Wesson revolver, serial #C–713973.

Lieutenant Floyd T. Alexander               –2–               December 11, 1969

L–100,605/0–261

5. While we are unable to definitely determine that the bullet from body of Walters was fired from the submitted Rossi revolver, we do find the evidence bullet and test bullets fired from the Rossi revolver to be the same caliber, to possess the same rifling characteristics (R–6) and to exhibit a number of microscopic markings common to both. We did not have ample time to process this bullet fully and complete our examination. We did not find any particular evidence of any markings or facts which would indicate a different weapon.

The evidence was returned to you personally on December 10, 1969.

Yours Very truly,

Joel Tisdale, Chief
Identification and Criminal Records Division

/s/ Fred R. Rymer, Supervisor
Firearms Section

FA/sh

case transferred from Bell County to Tarrant County, Texas. The case was assigned for handling by Criminal District Judge Byron Matthews, who after a, very active and distinguished record as a criminal defense attorney, has ably served as Judge of Criminal District Court No. 1 of Tarrant County, Texas, since January 1, 1963.

In Pretrial Motion No. 25 filed April 8, 1970, (Tr.177), the Petitioner-Defendant requested appointment of John G. Sojat of Clifton Hill, Missouri, as an independent ballistics expert not associated with a law enforcement agency.[2]

The pleadings, hearings and legal maneuvers concerning the payment of Mr. Sojat are detailed on pages 3, 4 and the top of page 5 in Magistrate Rankin's able findings.

Judge Byron Matthews in the June 15, 1970, hearing on the second motion for continuance held:

> With reference to the request for continuance based on paragraph one in the motion, the Court, where an indigent Defendant is represented by appointed Counsel, is always willing and anxious to see that he is represented by competent and capable counsel.
>
> I certainly feel that the three attorneys appointed in this case are competent, that their judgment in matters such as this are in good faith for the benefit of their client.
>
> Their strategy, of course, will not be criticized by the Court but I still feel that the Court has done everything possible to expedite the matter and permit them to have the benefits of the testimony that they have desired.
>
> I will overrule the second written motion for continuance filed by the Defendant. (R.555)

The trial judge, the district attorney, the commissioners court and the county auditor acting in the frame work of the statute, which is similar to the federal system setting maximums for such experts (Title 18, United States Code, Section 3006A(e), fully cooperated to make a third ballistics expert available and in an open and above board manner provided the needed funds.

The services of Mr. Sojat were not secured through the unilateral action of the Defendant and his counsel who espoused the theory that acceptance of the money would breach their ethical responsibilities, and would make them a party to subterfuge and possible other violations. (R.533)

The Court knows the high caliber of the three appointed attorneys, their partners and the law school professor whose advice was sought (R.533) moreover, the Court cannot conceive of the lawyers in question or any responsible lawyer risking the life of his client by failing to secure any reasonably available evidence that might be of benefit to his client even if the lawyer had to pay out of his own pocket the amount above the $250.00 authorized by statute, to wit, $185.20 in this case, which was not the case here.

The able trial judge clearly recognized the situation for what it was—trial strategy. The defense attorneys sought a third ballistics expert apparently not expecting that the trial court could or would provide this additional service. However, when the money for this expert was provided, it was clear that the odds were heavily in favor of the findings of the third expert witness being the same as the other two experts which would not inure to the benefit of Cherry, accordingly, counsel tried to save something by the trial strategy employed.

The record clearly established that the State provided the funds necessary to secure the ballistics expert Sojat on behalf of Cherry who was an indigent criminal defendant. No one on behalf of the trial court or the state could have done more, nor would any responsible person wish to do less.

The Court finds that the Petitioner asserted his constitutional right to be provided an independent ballistics expert, the trial court entered an order providing the neces-

---

**2.** Mr. Sojat had been employed as a ballistics expert with the Chicago Police Department and the crime laboratory of Dade County, Florida a total of some nineteen and one-half years.

sary funds, the officials of Dallas County approved payment of the requisite funds, and such expert was not secured through the unilateral action of Cherry's counsel.

IT IS THEREFORE, ORDERED that all relief sought by applicant on his claim that he was denied the assistance of an independent ballistics expert is denied.

IT IS FURTHER ORDERED that applicant's request for an order directing that he be given a lie detector test is denied.

IT IS FURTHER ORDERED that the Clerk shall transmit a true copy of this Order, together with a true copy of the Findings, Conclusions and Recommendation of the United States Magistrate, to applicant and his attorney of record and to the Honorable John L. Hill, Attorney General of the State of Texas.

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE

Pursuant to the provisions of 28 U.S.C. 636(b), and an Order of the Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate. The findings, conclusions and recommendation of the Magistrate, as evidenced by his signature thereto, are as follows:

### FINDINGS AND CONCLUSIONS:

James Walter Cherry is presently in custody of respondent pursuant to a judgment of conviction for murder with malice in the Criminal District Court No. 1, Tarrant County, Texas, in Cause No. 79923. A jury assessed the death penalty on June 27, 1970. While the case was on appeal the Governor commuted the sentence to life imprisonment and the conviction was affirmed by the Court of Criminal Appeals. Applicant was then formally sentenced by the trial court on May 17, 1973. In the original application filed herein, he advanced two complaints. The first complaint was that he was denied a fair trial because of the refusal of the Dallas County Commissioners Court to pay the sum of $435.20 for a proposed ballistics examination of the bullet which killed the deceased and the testimony about it from an alleged expert from the State of Missouri, Mr. John G. Sojat. The second complaint related to an alleged error in transferring the case to Tarrant County, Texas on a change of venue rather than transferring it to Denton County, Texas. Based on recommendations entered by me on August 7, 1974, the Court denied relief as to both of applicant's complaints. Subsequently, following a direct appeal to the United States Court of Appeals for the Fifth Circuit, that Court on January 24, 1975 vacated the judgment and remanded to this court with instructions that applicant's contention regarding denial of assistance of an independent ballistics expert be reconsidered in light of an examination of the state court record. *Cherry v. Estelle*, 507 F.2d 242. Respondent has now filed a voluminous record of the proceedings in state court. In view of the language of the appellate opinion, my recommendation will not further address the venue issue.

In supplemental pro se pleadings transmitted to the court subsequent to remand, applicant asked the court to order that he be given a lie detector test to prove his innocence. This court has no jurisdiction to order an applicant be given a lie detector test nor to determine any issue relating to his guilt or innocence. The critical question in habeas corpus proceedings by a state prisoner is not whether he is guilty or innocent but whether he received a fair trial. *Royal v. Dutton*, 392 F.2d 544 (5 Cir., 1968); *Fast v. Wainwright*, 310 F.Supp. 404, *affirmed*, 439 F.2d 1162 (5 Cir., 1970).

The murder indictment against applicant was returned in Dallas County, Texas, in January of 1969. On a motion for change of venue, the case was transferred to the 27th Judicial District Court of Bell County, Texas. Applicant presented a motion to that court, requesting an independent ballistics examination. The State had already procured a ballistics examination from Mr. Floyd Alexander of the Dallas Police Department. The Bell County court entered an order appointing Mr. Fred Rymer of the

Texas Department of Public Safety as an independent ballistics examiner. Whether or not, because of his connection with the Texas Department of Public Safety, Mr. Rymer could be considered an independent examiner may be open to question. He does not appear to have been one of applicant's choice but a reference to the motion reflects that applicant did not submit any choice to the court. Rather, he only asked that any independent expert be made available to the defendant. The motion and order are set forth at pages 104 and 105 of the transcript. I find no record of any objection to that appointment advanced by applicant at that time or later. A copy of Mr. Rymer's findings are annexed to the application in this case as Exhibit "E". It was applicant's defensive theory that the deceased Deputy Sheriff Walthers may have been killed by a bullet from a Smith and Wesson revolver owned by Deputy Sheriff Maddox who was shooting at applicant at the time applicant allegedly murdered Deputy Walthers with his Rossi revolver. As can be seen from the report, applicant's defensive theory is unequivocally refuted by that report, and, of course, it was to be of no assistance to him in his defense. It was later determined that the case had been erroneously transferred to Bell County and it was returned to Dallas County for further consideration of the issue relating to venue. Thereafter the case was transferred to Tarrant County, Texas, to the Criminal District Court No. 1 of Tarrant County, Texas. Subsequent to the transfer to Tarrant County, applicant filed Pretrial Motion No. 25, seeking another independent ballistics examination to be made by a qualified expert not associated with a law enforcement agency. That motion is set forth at page 177 of the transcript. Following a hearing on that motion (R.470–477), the Court entered an order granting that motion (Tr.209). That order directed the payment of the sum of $435.20 to applicant's attorneys to be used in securing the examination and, if necessary, the testimony of Mr. Sojat. It was recognized that there might be a problem in securing payment of that money. Art. 26.05, V.A.C.C.P., provides, among other things, for pay-

ment of appointed counsel fees, and expenses incurred for purposes of investigation and expert testimony. The statute directs that payment be made from the general fund of the county in which the prosecution was instituted, which in this case was Dallas County. The amounts to be paid for representation and other purposes is within the discretion of the Court, with maximum sums fixed therein. At the time of this trial the statute provided a maximum payment in the amount of $250 for "expenses incurred for purposes of investigation or expert testimony," and payment to counsel in the maximum sum of $100 "for each day in trial court representing the accused." It subsequently developed that considerable difficulty was, in fact, incurred in securing payment in the sum of $435.20, as specified in the order. Consequently at a hearing on applicant's first motion for continuance on May 25, 1970, the case was reset for trial in June in order that further efforts to secure payment of the funds necessary to employ Mr. Sojat could be pursued. (R.498–499) Progress was indeed made between that time and June 15, 1970, at which time the Court heard applicant's second motion for continuance just prior to proceeding to trial. The testimony adduced at that hearing is set forth in the record at pages 506–555 and I believe that part of the record clearly establishes facts sufficient to enable the court to make a ruling on the issue now before it. After carefully reviewing the just quoted portion of the record, I believe the following facts are clearly established:

1. An agreement was entered into between the attorneys representing applicant and the prosecuting attorneys whereby the full sum of $435.20 which had been requested by applicant's counsel to retain Mr. Sojat would be paid in the following manner. Two hundred fifty dollars would be advanced to Mr. Sojat as provided in Art. 26.05, V.A.C.C.P., for investigative services. The trial court, in exercising his discretion in the amount to be paid to attorneys under Art. 26.05, would pay the attorneys in a greater amount than he would otherwise ordinarily do in order to allow the attorneys

to pay Mr. Sojat any further necessary sum up to the amount requested for his services in making the ballistics examination and in giving expert testimony.

2. The trial court approved that agreement, (R.526), and entered two orders on June 9, 1970, designed to secure actual payment. (Tr. pages 219 and 220). While it appears from the record at pages 524–526 that there may have been some uncertainty concerning the exact number of days that counsel had appeared in court for hearings, it further appears that the court was attempting to make an accurate statement of the appearances and was broadly interpreting the statute to permit payment where counsel may have made an appearance in court for purposes other than an actual hearing. The record also pointedly reflects at page 526 that the court was exercising his discretion to see that the arrangement to provide for payment of the expert witness was carried out. The record does not reflect any reason why the stated number of appearance dates could not have been reduced if counsel felt the number of days had been incorrectly stated. The number of days and amount of payment could have been significantly reduced and sufficient funds still made available for retention of the expert. As the record reflects, at the time of the transactions under review in this case, appointed counsel in most criminal cases in this state were being grossly undercompensated. It was a general practice in many cases to make no payment to counsel for pretrial appearances.

3. Mr. Henry Wade, the District Attorney of Dallas County, Texas, approved this arrangement.

4. A full disclosure of the agreement was made to the County Commissioners of Dallas County and the County Auditor's office, and the Commissioners and the Auditor approved of this arrangement. (R.552)

5. Checks pursuant to the order had already been prepared or were being prepared for payment forthwith when applicant's attorneys unilaterally withdrew from the agreement and directed the Dallas County officials to withhold mailing of the check to Mr. Sojat. (R.534) The reasons assigned for refusal of the tendered money for expert services by Mr. Musselwhite, applicant's attorney, is set forth on page 533 of the record. He stated that he felt that if the money was accepted the attorneys would be a party "to subterfuge and possibly other violations." He sets forth no specific reasons why he considered the arrangement to be a subterfuge nor what other violations he thought might be involved.

6. Mr. Sojat's services were not obtained solely because of the unilateral refusal of applicant's attorneys to accept that money.

7. In view of the foregoing stated facts, there was certainly no reason for the Court to grant any further continuance based on any consideration relative to the hiring of an expert witness.

On direct appeal, applicant's appellate counsel, Mr. Bruder, contended in Ground of Error No. 9 that "appellant was denied the effective assistance of counsel by the trial court's refusal to authorize the disbursements of funds necessary to secure expert witness and to properly investigate the appellant's case." His argument to support that contention is set forth on pages 39 and 40 of appellant's brief. I believe it is clear that appellant's representation to the Court of Criminal Appeals that he was denied any sum in excess of $250 for expert witness and investigation is clearly refuted by the record and does not present to the Court of Criminal Appeals any issue relating to an alleged impropriety in the procedure adopted for full payment of the fees, and certainly no contention that the arrangement would be a fraud on Dallas County, as the arrangement has been described in some of applicant's pleadings in this case. In Ground of Error No. 21, page 64 of appellant's brief, the appellate counsel further complained that he was deprived of his right to an expert witness "because the Dallas County Treasurer failed to disburse funds to secure the attendance of an expert witness. . . ." As I have pointed out

above, I believe this representation is contrary to the record and fails to present the proper issue to the Court of Criminal Appeals. Either because the facts were not presented to the Court of Criminal Appeals or other reason about which I am not aware, that Court took no notice of the fact that funds for engaging the expert had been fully tendered and thereafter unilaterally refused by applicant's attorneys. That Court may simply have chosen to base its overruling of applicant's asserted grounds of errors on the reason set forth in its opinion. *Cherry v. State,* Tex.Cr.App., 488 S.W.2d 744, at page 753. The Court overruled applicant's advanced grounds of error No. 9 and No. 21 because the appellant's brief "does not refer to any portions of this voluminous record showing how the appellant was harmed and we have been unable to find any part of the record showing harm to the appellant." In my original recommendation entered in this case on August 7, 1974, I pointed with approval to the ruling of the Court of Criminal Appeals that applicant had demonstrated no harm resulting from a failure to secure Mr. Sojat's testimony. That was one of the grounds adopted by the Court in denying relief in the Order thereafter entered on August 8, 1974. I believe that neither the proposition that applicant has a burden of showing how he was harmed by failure to secure that testimony nor that denial of expert services and testimony, if in fact denied, might be harmless error can now be sustained in view of the later ruling of the United States Court of Appeals for the Fifth Circuit in the case of *Barnard v. Henderson,* 514 F.2d 744, June 12, 1975. That opinion appears to unequivocally hold that fundamental fairness is violated when a criminal defendant is denied the opportunity to have an expert of his own choosing. If the present record established that applicant was denied the assistance of an independent expert, then I believe he would be entitled to relief. I believe, however, that he was not denied the services of the expert, Mr. Sojat. I believe the record clearly establishes that after applicant had asserted his constitu-

tional right to be provided the expert services and testimony, the trial court entered an order which fully provided for the necessary funds, and that thereafter all of the officials of Dallas County approved payment of the needed funds, and stood ready to make payment. It appears to me that the sole reason Mr. Sojat was not brought in to conduct the investigation was because of the unilateral refusal of applicant's counsel to accept the money to hire the expert. For this reason, I believe that applicant should be denied relief on his complaint that he was denied the needed services and testimony of Mr. Sojat. This is the only complaint which has been advanced to the Court of Criminal Appeals and to this court in post conviction proceedings. While it is true that applicant's pleadings in the present proceeding do charge that the agreement whereby the expert was to be paid constituted a fraud on Dallas County, he did not raise that issue in the state court and it is alleged in the present proceeding only to attempt to equate the factual circumstances under which the requested money was tendered with a denial of the necessary funds. That equation does not balance.

There are two issues which might arise but which I do not believe are directly raised by the pleadings herein, and which I do not believe have been presented to the state court for a ruling:

First, if it be established that applicant was indeed offered the funds necessary to hire Mr. Sojat, as I believe the record clearly establishes, then to be entitled to relief I believe he must specifically allege and prove that the arrangement adopted whereby the funds were to be advanced was clearly unlawful or unethical. It seems to me this would be a heavy burden. Applicant demanded, as his constitutional right under the highest law of the land, a right to have the money advanced. The trial court granted his demand and entered its order providing for payment of the funds. Thereafter the District Attorney gave his legal opinion that the procedure was appro-

priate, and the payment was approved both by the Commissioners Court of Dallas County, the highest governing authority in this county, and the Dallas County Auditor. I find no opinion rendered by the Court of Criminal Appeals or any other court of this state which in any way indicates that it would be unlawful or in any way improper to provide funds under the arrangement adopted in this case to secure to defendant a constitutionally mandated right. If such a determination is to be made, I think applicant should surely be required to first present that issue to the state courts.

Second, if it be determined that applicant's counsel had no justifiable reason for refusing the proffered funds and that he may have chosen for tactical or strategical reasons to stand on a technicality, then the issue might arise as to whether or not his refusal to accept the funds and engage the expert was conduct such as to support a claim of ineffective assistance of counsel. This issue as stated has not been raised in the present application and has not been presented to the state court either by way of direct appeal or by application for post conviction relief under the provisions of Art. 11.07, V.A.C.C.P.

### RECOMMENDATION:

For the reasons stated hereinabove, I recommend that all relief sought by applicant on his claim that he was denied the assistance of an independent ballistics expert be denied. I also recommend that his request for an order directing that he be given a lie detector test be denied.