**In the Matter of the Application of Ferris GRAY, for a Writ of Habeas Corpus, Petitioner-Appellant,**

v.

**John F. ROWLEY, Respondent-Appellee.**

No. 79–1644

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1979.

Rehearing and Rehearing En Banc Denied Nov. 13, 1979.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

A. Scott Tillery, Chalmette, La., for petitioner-appellant.

Abbott J. Reeves, Asst. Dist. Atty., Gretna, La., for respondent-appellee.

Before CLARK, GEE and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

Appellant Ferris Gray, presently imprisoned in St. Bernard Parish, Louisiana, was tried by a jury for the aggravated rape of a nine-year-old girl. Gray was convicted and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. He appealed on the grounds presented here, and his conviction was affirmed. *State v. Gray*, 351 So.2d 448 (La. 1977). His exhaustion of state remedies is not in issue.

At trial, the state introduced into evidence the victim's underpants and shorts and Gray's pants, undershorts and shirt. An expert witness, called by the state, testified that he had examined these items of clothing and found blood and semen stains on the garments worn by the victim and those worn by Gray. Although the expert testified that it is possible to determine a person's blood type by testing his seminal fluid, he could not say that the seminal fluid on the clothing came from Ferris Gray. After the verdict, appellant motioned for a new trial based on the trial court's refusal to allow an independent examination of the clothing. The motion was denied.

In his petition for federal habeas relief, Gray contended that the trial court's refusal to permit an independent examination of the physical evidence denied him due process of law. After an evidentiary hearing, the magistrate found that since Gray had not provided the state with his blood type, the evidence at issue was not exculpatory, and thus Gray had no due process entitlement to inspect the garments under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The magistrate also found that the evidence denied Gray was not critical to his defense because there was no evidence linking him to the seminal fluid on the child's clothing and because there was other overwhelming evidence of his guilt. The district court adopted the magistrate's recommendation and denied relief.

On this appeal, Gray again contends that the trial court's refusal to allow an independent examination of the evidence denied him due process.

"Fundamental fairness is violated when a criminal defendant . . . is denied the opportunity to have an expert of his choosing . . . examine a piece of critical evidence whose nature is subject to varying expert opinion." *White v. Maggio*, 556 F.2d 1352, 1355 (5th Cir. 1977) (quoting *Barnard v. Henderson*, 514 F.2d 744, 746 (5th Cir. 1975)). The evidence must be both "critical" and "subject to carrying expert opinion." *White, supra* at 1356. "Critical evidence" is material evidence of substan-

tial probative force that "could induce a reasonable doubt in the minds of enough jurors to avoid a conviction." *Id.* at 1357–58 (footnote omitted).

■ Applying these standards, we find that the items of clothing and the expert's testimony concerning the stains were not critical to the determination of Gray's guilt or innocence. Defendant relies heavily on *Barnard*[1] and *White*, but his reliance is clearly misplaced.

In *Barnard, supra,* the defendant was charged with murder. Prior to Barnard's trial, the court denied his motion to permit an inspection of the murder weapon and bullet by a ballistics expert of his choosing. At trial, the state's expert witness identified the murder bullet, which was 75 percent destroyed, as having been fired by a .22 Ruger pistol traced to Barnard. The only other evidence against him was of limited probative value.[2] Noting that the identification was "*one of the most damaging pieces of evidence against Barnard,*" 514 F.2d at 746 (emphasis added), we held that Barnard had been deprived of his constitutional rights.

In *White, supra,* the defendant was denied an independent examination of a murder bullet introduced into evidence and identified by the state's expert as having the same markings as another bullet fired from defendant's gun. He concluded that both bullets were fired from the same gun. We stated that the denial of access to the bullets meant that "the jury received solely the State's interpretation of *the only tangible evidence connecting White to the murder.*" 556 F.2d at 1356 (emphasis added). Noting that the "probative force" of the

other evidence against White was "subject to attack,"[3] *id.* at 1358, we held that the evidence withheld from the defense was critical.

In contrast, the evidence denied appellant Gray in the instant case was not critical evidence. There was no evidence at trial linking Gray to the seminal fluid on the victim's clothing. Indeed, the state's expert expressly stated on cross-examination that he could not connect Gray with the semen on the child's clothes. Furthermore, there was overwhelming evidence, both direct and circumstantial, against Gray. The child, after relating the incident, described the rapist in detail. She later identified Gray in a lineup as the man who raped her and pointed him out in court. St. Bernard police officer Larry Ingargiola testified that he arrested Gray not far from the place the crime had been committed based on the description of the rapist that had been broadcast over the police radio. Captain Reichert of the St. Bernard Parish Sheriff's Office testified that Gray matched the description that the child had given of the rapist. The clothes and jewelry worn by Gray at the time of his arrest, which were placed in evidence, matched those described by the victim and the police officers. A janitor who worked at the school where the rape occurred testified that he saw Gray in the adjacent church around the time when the crime took place and further stated that when he started to walk towards Gray, appellant ran away. The janitor had identified Gray in a lineup and also identified him in the courtroom. Expert testimony regarding tests conducted on debris linking appellant to the scene of the crime indicated that soil found on the victim's hair,

---

1. Although Gray's trial took place before our ruling in *Barnard, Barnard* has been applied retroactively. *See White, supra* at 1355–56.

2. There were no eyewitnesses, but a bouncer at a lounge testified that Barnard had had an argument with the victim there the night before the murder and threatened to kill him. However, a prospective witness, who was prepared to testify that Barnard had never entered the lounge on that night, was precluded from testifying because she had not been sequestered throughout the trial.

3. The only other evidence adduced at trial was the testimony of an eyewitness and an inculpatory statement by the defendant. We found that the witness' ability to identify the defendant was questionable in light of the conditions under which the identification was made and that the inculpatory statement could have referred to another incident in which the defendant had participated.

shoes and pants was similar to soil from the shoeprint in the school yard. It was also revealed that white insulation-like material found on Gray's shoes was identical to material taken from the scene of the crime.

In light of the crushing weight of the other evidence against Gray, we hold that the garments were not critical evidence [4] such that the refusal to permit an independent examination of these items deprived Gray of due process.

AFFIRMED.

**4.** Since appellant was denied access to evidence that was not critical, we need not reach the second prong of the test set forth in *Barnard, supra,* that is, whether the evidence would be subject to varying expert testimony.

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.